# EXHIBIT 16

## Exclusive Right of Sale Listing Agreement
FLORIDA ASSOCIATION OF REALTORS®

1   This Exclusive Right of Sale Listing Agreement ("Agreement") is between
2*  _____ Waldyr da Prado Neto _____ ("Seller") and
3*  _____ Arch Realty, Inc. _____ ("Broker").

4   **1. AUTHORITY TO SELL PROPERTY:** Seller gives Broker the EXCLUSIVE RIGHT TO SELL the real and personal property
5*  (collectively "Property") described below, at the price and terms described below, beginning the ____27th____ day of
6*  ____August____, 2012, and terminating at 11:59 p.m. the ____23rd____ day of ____August____, 2013
7   ("Termination Date"). Upon full execution of a contract for sale and purchase of the Property, all rights and obligations of this
8   Agreement will automatically extend through the date of the actual closing of the sales contract. Seller and Broker
9   acknowledge that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10  color, religion, sex, handicap, familial status, national origin or any other factor protected by federal, state or local law. **Seller**
11  certifies and represents that he/she/it is legally entitled to convey the Property and all improvements.

12  **2. DESCRIPTION OF PROPERTY:**
13* (a) Real Property Street Address: _REDACTED_ Miami, Fl 33141 _____
14*
15* Legal Description: _REDACTED_ undiv .018022 int in common elements _____
16*    _____ ☐ See Attachment ____
17* (b) Personal Property, including appliances: Range/oven, refrigerator, microwave, dishwasher, washer/dryer
18*
19*    _____ ☐ See Attachment ____
20* (c) Occupancy: Property ☒ is ☐ is not currently occupied by a tenant. If occupied, the lease term expires ____.

21  **3. PRICE AND TERMS:** The property is offered for sale on the following terms, or on other terms acceptable to Seller:
22* (a) Price: $1,000,000.00
23* (b) Financing Terms: ☐ Cash ☒ Conventional ☐ VA ☐ FHA ☐ Other _____
24* ☐ Seller Financing: Seller will hold a purchase money mortgage in the amount of $ _____ with the
25* following terms: _____
26* ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $ _____ plus
27  an assumption fee of $ _____. The mortgage is for a term of ____ years beginning in ____, at
28  an interest rate of ____ % ☐ fixed ☐ variable (describe) _____
29  Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. Notice to Seller: You may remain liable for an
30  assumed mortgage for a number of years after the Property is sold. Check with your lender to determine the extent of your
31  liability. Seller will ensure that all mortgage payments and required escrow deposits are current at the time of closing and will
32  convey the escrow deposit to the buyer at closing.
33* (c) Seller Expenses: Seller will pay mortgage discount or other closing costs not to exceed ____ % of the purchase
34  price; and any other expenses Seller agrees to pay in connection with a transaction.

35  **4. BROKER OBLIGATIONS AND AUTHORITY:** Broker agrees to make diligent and continued efforts to sell the Property until
36  a sales contract is pending on the Property. Seller authorizes Broker to:
37  (a) Advertise the Property as Broker deems advisable including advertising the Property on the Internet unless limited in
38  (4)(a)(i) or (4)(a)(ii) below.
39  (Seller opt-out)(Check one if applicable)
40* ☐ (i) Display the Property on the Internet except the street address of the Property shall not be displayed on the Internet.
41* ☐ (ii) Seller does not authorize Broker to display the Property on the Internet.
42  Seller understands and acknowledges that if Seller selects option (ii), consumers who conduct searches for listings on
43  the Internet will not see information about the listed property in response to their search.
44* _____ / _____ Initials of Seller.
45  (b) Place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once Seller signs a sales
46  contract) and use Seller's name in connection with marketing or advertising the Property.
47  (c) Obtain information relating to the present mortgage(s) on the Property.
48  (d) Place the Property in a multiple listing service ("MLS"). Seller authorizes Broker to report to the MLS this listing
49  information and price, terms and financing information on any resulting sale for use by authorized Board / Association
50  members, MLS participants and subscribers; and

51* Seller (_/_) (____) and Broker/Sales Associate (_/_) (____) acknowledge receipt of a copy of this page, which is Page 1 of 4 Pages.

ERS-14tb   Rev. 11/09   © 2009   Florida Association of REALTORS®   All Rights Reserved

Arch Realty 455 Grand Bay Dr Key Biscayne, Fl 33149
Phone: 305.361.1550   Fax: 305.503.6722   Lourdes Lorenzo-Luaces   Waldyr da Prado

52  (e) Provide objective comparative market analysis information to potential buyers; and
53* (f) (Check if applicable) ☒ Use a lock box system to show and access the Property. A lock box does not ensure the
54  Property's security; Seller is advised to secure or remove valuables. Seller agrees that the lock box is for Seller's benefit and
55  releases Broker, persons working through Broker and Broker's local Realtor Board / Association from all liability and
56* responsibility in connection with any loss that occurs. ☐ Withhold verbal offers. ☐ Withhold all offers once Seller accepts a
57  sales contract for the Property.
58  (g) Act as a transaction broker of Seller.
59  (h) **Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These websites are
60  referred to as Virtual Office Websites ("VOW"). An automated estimate of market value or reviews and comments about a
61  property may be displayed in conjunction with a property on some VOWs. Anyone who registers on a Virtual Office Website
62  may gain access to such automated valuations or comments and reviews about any property displayed on a VOW. Unless
63  limited below, a VOW may display automated valuations or comments/reviews (blogs) about this Property.
64* ☐ Seller does not authorize an automated estimate of the market value of the listing (or hyperlink to such estimate) to be
65  displayed in immediate conjunction with the listing of this Property.
66* ☐ Seller does not authorize third parties to write comments or reviews about the listing of the Property (or display a hyperlink
67  to such comments or reviews) in immediate conjunction with the listing of this Property.

68  **5. SELLER OBLIGATIONS:** In consideration of **Broker's** obligations, **Seller** agrees to:
69  (a) Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to **Broker** all
70  inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
71  (b) Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during reasonable times.
72  (c) Inform **Broker** prior to leasing, mortgaging or otherwise encumbering the Property.
73  (d) Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs and expenses of any nature, including
74  attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's** negligence, representations,
75  misrepresentations, actions or inactions, (2) the use of a lock box, (3) the existence of undisclosed material facts about the
76  Property; or (4) a court or arbitration decision that a broker who was not compensated in connection with a transaction is
77  entitled to compensation from **Broker**. This clause will survive **Broker's** performance and the transfer of title.
78  (e) To perform any act reasonably necessary to comply with FIRPTA (Internal Revenue Code Section 1445).
79  (f) Make all legally required disclosures, including all facts that materially affect the Property's value and are not readily
80  observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such material facts (local
81* government building code violations, unobservable defects, etc.) other than the following: _____
82* _____
83  **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.
84  (g) Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting requirements
85  and other specialized advice.

86  **6. COMPENSATION: Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing and able to
87  purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to
88  **Seller. Seller** will pay **Broker** as follows (plus applicable sales tax):
89* (a) __6.000__ % of the total purchase price plus $ _____ OR $ _____, no later than the
90  date of closing specified in the sales contract. However, closing is not a prerequisite for**Broker's** fee being earned.
91* (b) _____ ($ or %) of the consideration paid for an option, at the time an option is created. If the option is exercised,
92  **Seller** will pay **Broker** the paragraph 6(a) fee, less the amount **Broker** received under this subparagraph.
93* (c) __10__ ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or agreement to
94  lease, whichever is soonest. This fee is not due if the Property is or becomes the subject of a contract granting an exclusive
95  right to lease the Property.
96  (d) Broker's fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by sale, lease,
97  exchange, governmental action, bankruptcy or any other means of transfer, regardless of whether the buyer is secured by
98  **Broker, Seller** or any other person. (2) If **Seller** refuses or fails to sign an offer at the price and terms stated in this Agreement,
99* defaults on an executed sales contract or agrees with a buyer to cancel an executed sales contract. (3) If, within __180__ days after
100 Termination Date ("Protection Period"), **Seller** transfers or contracts to transfer the Property or any interest in the Property to any
101 prospects with whom **Seller, Broker** or any real estate licensee communicated regarding the Property prior to Termination Date.
102 However, no fee will be due **Broker** if the Property is relisted after Termination Date and and sold through another broker.
103* (e) Retained Deposits: As consideration for **Broker's** services, **Broker** is entitled to receive __50.000__ % of all deposits that
104 **Seller** retains as liquidated damages for a buyer's default in a transaction, not to exceed the paragraph 6(a) fee.

105 **7. COOPERATION AND COMPENSATION WITH OTHER BROKERS:** Broker's office policy is to cooperate with all other
106* brokers except when not in **Seller's** best interest: ☒ and to offer compensation in the amount of __3.000__ % of the
107* purchase price or $ _____ to Buyer's agents, who represent the interest of the buyers, and not the interest of**Seller** in

108* Seller (__/__) (____) and Broker/Sales Associate (__/__) (____) acknowledge receipt of a copy of this page, which is Page 2 of 4 Pages.

ERS-14tb   Rev. 11/09   © 2009   Florida Association of REALTORS®   All Rights Reserved

109 a transaction; ☐ and to offer compensation in the amount of _____ % of the purchase price or $ _____ to a
110 broker who has no brokerage relationship with the Buyer or Seller; ☒ and to offer compensation in the amount of
111 __3.000__ % of the purchase price or $ _____ to Transaction brokers for the Buyer: ☐ None of the above (if this is
112 checked, the Property cannot be placed in the MLS.)

113 **8. BROKERAGE RELATIONSHIP:** Under this Agreement, Broker will be acting as a transaction broker. Broker will deal
114 honestly and fairly with Seller, will account for all funds, will use skill, care, and diligence in the transaction, will disclose all
115 known facts that materially affect the value of the residential property which are not readily observable to the buyer, will present
116 all offers and counteroffers in a timely manner unless directed otherwise in writing and will have limited confidentiality with Seller
117 unless waived in writing.

118 **9. CONDITIONAL TERMINATION:** At Seller's request, Broker may agree to conditionally terminate this Agreement. If Broker
119 agrees to conditional termination, Seller must sign a withdrawal agreement, reimburse Broker for all direct expenses incurred
120 in marketing the Property and pay a cancellation fee of $ __1,000.00__ plus applicable sales tax. Broker may void the
121 conditional termination and Seller will pay the fee stated in paragraph 6(a) less the cancellation fee if Seller transfers or
122 contracts to transfer the Property or any interest in the Property during the time period from the date of conditional termination
123 to Termination Date and Protection Period, if applicable.

124 **10. DISPUTE RESOLUTION:** This Agreement will be construed under Florida law. All controversies, claims and other matters
125 in question between the parties arising out of or relating to this Agreement or the breach thereof will be settled by first
126 attempting mediation under the rules of the American Mediation Association or other mediator agreed upon by the parties. If
127 litigation arises out of this Agreement, the prevailing party will be entitled to recover reasonable attorney's fees and costs, unless
128 the parties agree that disputes will be settled by arbitration as follows: **Arbitration:** By initialing in the space provided, **Seller**
129 (____) (____), Listing Associate (____) and Listing Broker (____) agree that disputes not resolved by mediation will be settled
130 by neutral binding arbitration in the county in which the Property is located in accordance with the rules of the American
131 Arbitration Association or other arbitrator agreed upon by the parties. Each party to any arbitration (or litigation to enforce the
132 arbitration provision of this Agreement or an arbitration award) will pay its own fees, costs and expenses, including attorney's
133 fees, and will equally split the arbitrators' fees and administrative fees of arbitration.

134 **11. MISCELLANEOUS:** This Agreement is binding on Broker's and Seller's heirs, personal representatives, administrators,
135 successors and assigns. Broker may assign this Agreement to another listing office. This Agreement is the entire agreement
136 between Broker and Seller. No prior or present agreements or representations shall be binding on Broker or Seller unless
137 included in this Agreement. Signatures, initials and modifications communicated by facsimile will be considered as originals.
138 The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees and other categories of potential
139 or actual transferees.

140 **12. ADDITIONAL TERMS:** _____
141 _____
142 _____
143 _____
144 _____
145 _____
146 _____
147 _____
148 _____
149 _____
150 _____
151 _____
152 _____
153 _____
154 _____
155 _____
156 _____

157 Seller (__) (____) and Broker/Sales Associate (__) (____) acknowledge receipt of a copy of this page, which is Page 3 of 4 Pages.

ERS-14tb   Rev. 11/09   © 2009   Florida Association of REALTORS®   All Rights Reserved

Waldyr da Prado

158* Date: 09.03.12      Seller's Signature: _____   Tax ID No: _____
                                              Waldyr da Prado Neto
159* Home Telephone: _____   Work Telephone: _____   Facsimile: _____

160* Address: _____

161* Date: _____   Seller's Signature: _____   Tax ID No: _____

162* Home Telephone: _____   Work Telephone: _____   Facsimile: _____

163* Address: _____

164* Date: 08/25/2012     Authorized Listing Associate or Broker: _____
                                                                  Lourdes Luaces
165* Brokerage Firm Name: Arch Realty, Inc.                          Telephone: (305) 361-1550

166* Address: 455 Grand Bay Drive, Key Biscayne, Fl 33149

167* | Copy returned to Customer on the _____ day of _____, _____ by: ☐ personal delivery ☐ mail ☐ E-mail ☐ facsimile |

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

168* Seller (___) (___) and Broker/Sales Associate (___) (___) acknowledge receipt of a copy of this page, which is Page 4 of 4 Pages.

ERS-14tb   Rev. 11/09   © 2009   Florida Association of REALTORS®   All Rights Reserved