UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,                      :
                                                         :
                              Plaintiff,                 :
                                                         :
         -against-                                       :
                                                         :    12 Civ. 7094 (WHP)
WALDYR DA SILVA PRADO NETO,                              :
                                                         :
                                                         :
                                                         :    ECF CASE
                              Defendant.                 :
-------------------------------------------------------------------x


**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR LEAVE TO SERVE DEFENDANT
<u>WALDYR DA SILVA PRADO NETO BY ALTERNATIVE MEANS</u>**


                              Charles D. Riely
                              David S. Brown
                              Megan M. Bergstrom



                              Counsel for the Plaintiff
                              Securities and Exchange Commission
                              New York Regional Office
                              3 World Financial Center
                              New York, NY  10281



June 21, 2013

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

    I.    BACKGROUND ..................................................................................................... 2

        A.  The Commission's Claims Against Prado ................................................... 2

        B.  The Commission Notified Prado of This Action and Served Him With Papers Related to Its Asset Freeze Application ................................. 3

        C.  The Commission's Efforts to Serve Prado ................................................. 4

        D.  The Commission's Updates Regarding Service and Its Request to File This Motion ..... 5

ARGUMENT ......................................................................................................................... 6

    I.    STANDARD GOVERNING ALTERNATIVE SERVICE ................................... 6

    II.   SERVICE BY ALTERNATIVE MEANS IS APPROPRIATE AGAINST PRADO ........ 7

        A.  Service Is Not Prohibited By International Law ......................................... 8

        B.  The Commission's Methods of Service All Satisfy Constitutional Due Process Requirements ........... 8

           i.  Serving Prado By Publication Satisfies Constitutional Due Process Requirements ........... 9

          ii.  Service By Email Also Satisfies Constitutional Due Process Requirements ........ 12

          iii.  Service On Prado's Counsel Satisfies Due Process Requirements ....................... 14

CONCLUSION .................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

BP Prods. North America, Inc. v. Dagra
   236 F.R.D. 270 (E.D. Va. 2006) ................................................................................... 9, 11

Export-Import Bank v. Asia Pulp & Paper Co., Ltd.
   2005 U.S. Dist. LEXIS 8902, 2005 WL 1123755 (S.D.N.Y. May 11, 2005) ........................... 7

KPN B.V. v. Corcyra D.O.O.
   2009 U.S. Dist. LEXIS 20906, 2009 WL 690119 (S.D.N.Y. Mar. 16, 2009) ........................... 6

Kreimerman v. Casa Veerkemp, S.A.
   22 F.3d 634 (5th Cir. 1994) .................................................................................................. 8

Liberty Media Holdings, LLC v. Vinigay.com
   2011 U.S. Dist. LEXIS 26657, 2011 WL 810250 (D. Ariz. Mar. 3, 2011) ......................... 8, 13

Luessenhop v. Clinton County, N.Y.
   466 F.3d 259 (2d Cir. 2006) .................................................................................................. 6

Lyman Morse Boatbuilding Co., Inc. v. Lee
   2011 U.S. Dist. LEXIS 1853, 2011 WL 52509 (D. Me. Jan. 6, 2011) ..................................... 8

Mullane v. Cent. Hanover Bank & Trust Co.
   339 U.S. 306, 70 S. Ct. 652 L. Ed. 865 (1950) ................................................................. 6, 8

Philip Morris USA Inc. v. Veles Ltd.
   2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 12, 2007) ..................................................... 13

Rio Properties, Inc. v. Rio International Interlink
   284 F.3d 1007 (9th Cir. 2002) ..................................................................................... 6, 12, 13

RSM Prod. Corp. v. Fridman
   2007 U.S. Dist. LEXIS 37713, 2007 WL 1515068 (S.D.N.Y. May 24, 2007) ........................ 6

Russell Brands, LLC v. GVD International Trading, SA
   282 F.R.D. 21 (D. Mass. 2012) ............................................................................................. 8

Ryan v. Brunswick Corp.
   2002 U.S. Dist. LEXIS 13837, 2002 WL 1628933 (W.D.N.Y. May 31, 2002) .................. 6, 13

SEC v. Anticevic
  2009 WL 361739 (S.D.N.Y. Feb. 13, 2009) .................................................................. 11, 12

SEC v. Nagaicevs
  2012 U.S. Dist. LEXIS 148983 (N.D. Cal. Oct. 16, 2012) ................................................. 13

SEC v. Tome
  833 F.2d 1086 (2d Cir. 1987) ................................................................................................ 9

Smith v. The Islamic Emirate of Afghanistan
  2001 U.S. Dist. LEXIS 21712, 2001 WL 1658211 (S.D.N.Y. Dec. 26, 2001) ...................... 10

## FEDERAL STATUTES

**Securities Exchange Act of 1934**

Section 10(b)
  [15 U.S.C. § 78j(b)] ............................................................................................................... 2

Section 14(e)
  [15 U.S.C. § 78n(e)] .............................................................................................................. 2

## FEDERAL REGULATIONS

Rule 10b-5
  [17 C.F.R. § 240.10b-5] ......................................................................................................... 2

Rule 14e-3
  [17 C.F.R. § 240.14e-3] ......................................................................................................... 2

## FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 4(f)(3) ................................................................................ passim

## LOCAL RULES

Civil Practice Law and Rule 316 ............................................................................................... 12

Plaintiff Securities and Exchange Commission ("Commission"), by and through its counsel of record, hereby moves for an order, pursuant to Federal Rule of Civil Procedure 4(f)(3) and the Court's Scheduling Order of May 24, 2013 (Docket No. 22), directing service of the summons and complaint on Defendant Waldyr Da Silva Prado Neto ("Prado") by alternative means.

**INTRODUCTION**

The Commission brings this motion to effect formal service on a defendant who is well-aware of the Commission's action, but has taken several steps to evade service of the summons and complaint. The Commission has made several attempts to serve Prado with the summons and complaint since filing on September 20, 2012, but Prado has consistently refused to accept service or even inform the Commission of his whereabouts. The Commission, for example, has attempted to serve Prado through counsel he has authorized to contact the Commission. In fact, two different attorneys claiming to represent Prado contacted Commission staff. Each of these attorneys purported to seek to resolve this action, but refused to accept service of the complaint on behalf of Prado. The Commission has also taken steps to serve him pursuant to the Inter-American Convention on Letters Rogatory and Additional Protocol (the "Convention") at several different addresses.[1] While this process was initiated shortly after the filing of the complaint, it has not yet resulted in service on Prado and the Commission has no guarantee that service will be completed soon.

Therefore, to expedite the resolution of the service issue, the Commission brings this motion to seek service by alternative means. Rule 4(f)(3) of the Federal Rules of Civil

---

[1] Brazil is not a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; it is a signatory to the Inter-American Convention. (*See* Bergstrom Decl., ¶ 2, Ex. 1.)

1

Procedure provides that an individual may be served outside the United States in alternative ways, including "by other means not prohibited by international agreement, as the court orders." As detailed below, the Commission seeks permission to effect service: (1) by publication through: (a) publishing an order about the pendency of this action, once a week for four consecutive weeks, in the *International Herald Tribune,* a widely read newspaper in the financial and investment communities to which Prado, a former registered securities professional, belonged; and (b) publishing an order about the pendency of this action, once a week for four consecutive weeks, in the *Miami Herald*, which is a widely circulated newspaper in Miami, Florida, where Prado lived and worked before he fled to Brazil in August 2012 and where he still owns real property;  (2) by emailing the summons and complaint to the four email addresses the Commission's counsel has for Prado; and (3) by emailing and serving by overnight mail the summons and complaint on the two counsel Prado authorized to contact the Commission.  Rule 4(f)(3) authorizes these alternative means of service provided they comport with constitutional due process and are not prohibited by international agreement.

I. **BACKGROUND**

  A. **The Commission's Claims Against Prado**

On September 20, 2012, the Commission filed its complaint alleging that Prado violated Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 and Exchange Act Rules 10b-5 and 14e-3.  The Commission charged Prado with insider trading in the securities of Burger King Holdings, Inc. ("Burger King") in advance of the September 2, 2010 announcement that it would be acquired by affiliates of 3G Capital Partners Ltd.  (Complaint, ¶ 1.)  The Commission alleges that Prado, while a registered representative at Wells Fargo Advisors, LLC in Miami, misappropriated material nonpublic information about the acquisition of Burger King from one

2

of his brokerage customers who invested at least $50 million in the fund that 3G Capital used to acquire Burger King. (*Id.,* ¶ 2.) The Commission alleges that Prado used this information to trade Burger King securities, and tipped at least four others, including one brokerage customer who traded Burger King securities on the basis of that information. (*Id.*) The complaint seeks a permanent injunction against Prado as well as an order of disgorgement plus prejudgment interest of all illicit trading profits and civil monetary penalties. (*Id.*)

### B. The Commission Notified Prado of This Action and Served Him With Papers Related to Its Asset Freeze Application

The Commission has taken several steps to alert Prado of this action, and has also served him with papers relating to the Commission's application for an asset freeze. First, immediately before filing this action, the Commission's counsel called Prado on his Brazilian cell phone and sent him an email advising him of the filing of this action and of the Commission's intention to seek an asset freeze. (*See* Docket No. 6; Bergstrom Decl., ¶ 6, Ex. 2.) Second, the Commission also served Prado with papers in compliance with Court orders relating to the Commission's asset freeze application. (*See* Docket No. 10.)

On September 20, 2012, the Court granted the Commission's *ex parte* application and entered a temporary restraining order, order to show cause, orders freezing assets and other relief against Prado. (*See* Docket No. 3.) Pursuant to that order, the Commission's counsel caused to be served on Prado by email and overnight delivery to his last known address in Miami copies of the summons and complaint, the Commission's *ex parte* application for emergency relief and supporting papers, and the September 20, 2012 order. (*See* Docket No. 10.) The Commission's counsel also provided a copy of the September 20, 2012 order to a lawyer who identified himself as representing Prado. (*See* Docket Nos. 14-0 and 14-1; Bergstrom Decl., ¶ 7, Ex. 3.) On October 4, 2012, the Court granted the Commission's application for a preliminary injunction and orders

3

freezing assets, prohibiting the destruction of documents, and repatriating funds and on October 5, 2012 entered an order of preliminary injunction and other relief against Prado. (*See* Docket No. 15.) Pursuant to that order, the Commission's counsel caused to be served on Prado by email and overnight delivery to his last known address in Miami a copy of the October 5, 2012 order, which was also provided to the lawyer who identified himself as representing Prado as well as to the realtor Prado hired to sell his Miami real property. (*See* Docket No. 16.) The Commission's counsel also caused the October 5, 2012 order to be recorded with the Miami-Dade County Clerk's Office/County Recorder's Office against Prado's real property in Miami. (*Id.*)

C. **The Commission's Efforts to Serve Prado**

The Commission has also taken additional steps to serve Prado with the summons and complaint. On two separate occasions, the Commission attempted to serve Prado through counsel Prado authorized to contact the Commission. On September 25, 2012, shortly after the action was filed, an attorney, Thomas McGonigle, called the Commission staff to state that his firm represented Prado and that his client wished to explore a possible resolution of the Commission's claims. (Bergstrom Decl., ¶ 7). McGonigle stated that while he was authorized to negotiate with the Commission, Prado had not authorized him to accept service. (*Id.*) On March 22, 2013, Commission staff communicated with a second lawyer, Ricardo Arce, who stated that he represented Prado. When asked whether he would accept service on behalf of Prado, Arce said that he would check with Prado. To date, Arce has not indicated that he is authorized to accept service. (Bergstrom Decl., ¶ 8.)

The Commission has also taken several steps to effect service on Prado through the Convention. In November and December 2012, the Commission provided papers to the Central Authority of Brazil, in order to effect service of the summons and complaint in this action on

4

Prado in Brazil. In all, the Commission attempted to serve Prado at four different addresses in Brazil. (*Id.*, ¶¶ 3 & 4).[2]

### D. The Commission's Updates Regarding Service and Its Request to File This Motion

As reflected in the Court's docket, Commission counsel has also provided periodic updates to the Court regarding its efforts to serve Prado. On December 11, 2012, the Court filed a letter from the Commission's counsel advising the Court that the Commission's counsel had undertaken efforts to serve Prado with the summons and complaint in Brazil under the Convention. (*See* Docket No. 19.) On February 7, 2012, the Commission's counsel sent a letter to the Court advising that additional information was obtained that Prado was in Brazil and that efforts had been undertaken to serve him there under the Convention. (*See* Docket No. 20.) The Commission's counsel further advised the Court that service under that Convention can take up to two years. On May 17, 2013, the Court filed a letter from the Commission's counsel advising the Court on the status of efforts to serve Prado with the summons and complaint in Brazil and that the Commission's counsel had been contacted by attorneys claiming to represent Prado who refused to accept service of the summons and complaint on his behalf. (*See* Docket No. 21.) The Commission's counsel requested a pre-motion conference on a motion to serve Prado with the summons and complaint through alternative means. (*Id*.) On May 23, 2013, the Court held a telephone conference with the Commission's counsel and on May 24 entered its Scheduling Order with respect to this motion. (*See* Docket No. 22.)

---

[2] The Commission's efforts to serve Prado via the Convention are discussed in more detail in the Bergstrom Declaration.

# ARGUMENT

## I. STANDARD GOVERNING ALTERNATIVE SERVICE

A Court may direct service on an individual in a foreign country by any "means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). "Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *KPN B.V. v. Corcyra D.O.O.*, 2009 U.S. Dist. LEXIS 20906, 2009 WL 690119, at *1 (S.D.N.Y. Mar. 16, 2009) (citation and internal quotation marks omitted). The Constitution does not does not require or prefer any particular means or methods of alternative service of process under Rule 4(f)(3). *Rio Properties, Inc. v. Rio International Interlink,* 284 F.3d 1007, 1017 (9th Cir. 2002). Courts have recognized that permissible methods of service may shift as technological capabilities evolve. *Id.* (holding that with regard to due process restrictions on service, "this broad constitutional principle unshackles the federal courts from anachronistic methods of service and permits them entry into the technological renaissance") (citing cases). What is required is that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Luessenhop v. Clinton County, N.Y.*, 466 F.3d 259, 269 (2d Cir. 2006) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

"The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *RSM Prod. Corp. v. Fridman*, 2007 U.S. Dist. LEXIS 37713, 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007) (citation and internal quotation marks omitted). In exercising this discretion, district courts may "impose a threshold requirement for parties to meet before seeking the court's assistance." *Ryan v.*

*Brunswick Corp.*, 2002 U.S. Dist. LEXIS 13837, 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002). A district court may require the parties "to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary." *Export-Import Bank v. Asia Pulp & Paper Co., Ltd*., 2005 U.S. Dist. LEXIS 8902, 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005) (citation and internal quotation marks omitted). This requirement, although not expressly provided by Rule 4(f)(3), "is necessary in order to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." *Brunswick*, 2002 U.S. Dist. LEXIS 13837, 2002 WL 1628933, at *2.

II.     **SERVICE BY ALTERNATIVE MEANS IS APPROPRIATE AGAINST PRADO**

The Commission filed evidence with the Court that Prado left the United States for Brazil in August 2012. (*See* Docket No. 6, ¶ 5; Docket No. 9-0, ¶¶ 17, 19, 20.) Soon after the preliminary injunction was entered, the Commission's counsel undertook to serve Prado under the Convention with the summons and complaint in Brazil where he is believed to reside. (Bergstrom Decl., ¶¶ 3, 4.) Although that process is underway, it can take at least two years, and at present, service on Prado has not been effectuated at any of the four possible locations where he may reside. (*Id*., ¶ 5.) The circumstances here are such that, in the meantime, the Commission proposes to effect service upon Prado in accordance with Fed. R. Civ. P. 4(f)(3). As detailed below, alternative service is appropriate because it is not prohibited by international law and because the proposed methods of service comply with constitutional due process requirements.

A. <u>**Service Is Not Prohibited By International Law**</u>

Here, service by alternative means is not prohibited by any international agreement. Under the Convention – the only potentially relevant international agreement here – alternative means of service are not prohibited.[3] *Kreimerman v. Casa Veerkemp, S.A.*, 22 F.3d 634, 639-44 (5th Cir. 1994). Alternative service under Rule 4(f)(3) has been ordered upon Brazilian defendants in other cases. *Russell Brands, LLC v. GVD International Trading, SA,* 282 F.R.D. 21, 26 (D. Mass. 2012) (ordering that defendant in Brazil may be served through personal delivery and email to its attorneys and service via overnight mail at its Brazilian address); *Liberty Media Holdings, LLC v. Vinigay.com*, 2011 U.S. Dist. LEXIS 26657, 2011 WL 810250, at *3-5 (D. Ariz. Mar. 3, 2011) (ordering that defendants in Brazil may be served at their last known email addresses); *Lyman Morse Boatbuilding Co., Inc. v. Lee*, 2011 U.S. Dist. LEXIS 1853, 2011 WL 52509, *3 (D. Me. Jan. 6, 2011) (the court found, in granting alternative service, that any attempt at formal service of the defendant through the Brazilian judicial system will be, if not fruitless, prolonged for such an extensive period of time that evidence and testimony may well be affected).

B. <u>**The Commission's Methods of Service All Satisfy Constitutional Due Process Requirements**</u>

A court may fashion alternative means of service pursuant to Fed. R. Civ. P. 4(f), provided that the designated method complies with the due process requirement that it be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. To ensure that Prado has notice, the Commission has proposed three separate methods of service. Specifically, the Commission proposes that Prado be served by: (1) publication through the

---

[3] Bergstrom Decl. ¶ 2, Ex. 1

8

*International Herald Tribune* and the *Miami Herald*; (2) emailing a summons and complaint to the four email addresses the Commission's counsel has for Prado; and (3) emailing and serving by overnight mail a summons and complaint on the two counsel Prado has authorized to contact the Commission. As described below, each of these methods of service meet the requirements of due process.

### i. Serving Prado By Publication Satisfies Constitutional Due Process Requirements

First, serving Prado by publication satisfies the constitutional due process requirements. "Service by publication to a defendant in a foreign country is an acceptable alternative means under 4(f)(3), so long as diligent attempts have been made to locate the defendant and serve process by traditional means, and the publication is one that likely would reach the defendant." *BP Prods. North America, Inc. v. Dagra*, 236 F.R.D. 270, 272 (E.D. Va. 2006) (service by publication appropriate where exact address unknown). Moreover, where, as here, there is a basis to conclude the defendant has "some knowledge that he might be subject to a suit," alternative service by publication pursuant to Fed. R. Civ. P. 4(f)(3) comports with due process. *Id.* at 272-73 (concluding defendant had sufficient notice to permit service by publication because he operated a multi-million dollar business in the U.S. and personally guaranteed promissory notes for millions of dollars that were in default). As the Second Circuit has recognized, service by publication on a defendant with notice of the lawsuit against him is more likely to satisfy due process. *SEC v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987) (condoning service of process by publication in the *International Herald Tribune* as it is widely read in the financial community). Even Osama bin Laden was permitted to be served by publication in the

9

*International Herald Tribune* and other newspapers. *Smith v. The Islamic Emirate of Afghanistan*, 2001 U.S. Dist. LEXIS 21712, 2001 WL 1658211, *3 (S.D.N.Y. Dec. 26, 2001).

Here, there is ample basis for the Court to conclude Prado has notice and knowledge of the specific claims in this lawsuit. In particular, by instructing his attorneys to contact the Commission's counsel but not to accept service on his behalf, Prado can only be deemed to be both well-aware of the Commission's action and to be avoiding service of process in this action. (Bergstrom Decl., ¶¶ 7, 8.) Specifically, Prado is on notice of this action and has knowledge of the claims at issue because the Commission's counsel has:

1. called Prado on his Brazilian cell phone and sent him an email advising of the filing of this action and of the Commission's intention to seek an asset freeze against him immediately before this action was filed (Docket No. 6; Bergstrom Decl., ¶ 6, Ex. 2);

2. served on Prado by email and overnight delivery to his last known address in Miami copies of the summons and complaint, the Commission's *ex parte* application for emergency relief and supporting papers, and the Court's September 20, 2012 temporary restraining order (Docket No. 10);

3. provided a copy of the September 20, 2012 order to a lawyer who identified himself as representing Prado, who also received a draft stipulation and proposed order for the entry of a preliminary injunction against Prado (Docket Nos. 14-0 and 14-1; Bergstrom Decl., ¶ 7, Ex. 3);

4. served on Prado by email and overnight delivery to his last known address in Miami a copy of the Court's October 5, 2012 order (Docket No. 16);

  5. provided a copy of the Court's October 5, 2012 order of preliminary injunction to the lawyer who identified himself as representing Prado as well as to the realtor Prado hired to sell his Miami real property (*Id.*);

  6. caused the October 5, 2012 order to be recorded with the Miami-Dade County Clerk's Office/County Recorder's Office against Prado's real property located in Miami (*Id.*); and

  7. as recently as March 2013, communicated with a lawyer who identified himself as representing Prado about a potential resolution of the Commission's action, who failed to respond to Commission counsel's inquiry about accepting service of the summons and complaint on Prado's behalf.  (Bergstrom Decl., ¶ 8)

Based on the above facts, it is reasonable to conclude that Prado is aware of -- and evading -- this action.

  Moreover, service by publication is likely to reach Prado.  Publishing notices in the *International Herald Tribune*, which is widely read in the financial and investment communities, and in the *Miami Herald*, where Prado last lived and worked in the United States and where he currently owns real property, is reasonably calculated to provide him with notice of this lawsuit.  The Commission proposes to publish notices to Prado once a week for four consecutive weeks in both newspapers.  (Bergstrom Decl., ¶ 15, Ex. 9.)  For these reasons, the Commission's proposed method of serving Prado by publication comports with due process.

  Because the Federal Rules of Civil Procedure do not specify the manner in which to serve a defendant by publication, courts authorizing service by publication on foreign defendants have looked to the forum state's law governing service by publication to determine whether such service is proper.  *BP Prods.*, 236 F.R.D. at 273; *SEC v. Anticevic*, 2009 WL 361739, *5

11

(S.D.N.Y. Feb. 13, 2009). In New York, Rule 316 of the New York Civil Practice Law and Rules provides that an order for publication shall:

> direct that the summons be published together with the notice to the defendant, a brief statement of the nature of the action and the relief sought, and . . . the sum of money for which judgment may be taken in case of default . . . in two newspapers, at least one in the English language, designated in the order as most likely to give notice to the person to be served, for a specified time, at least once in each of four successive weeks….

*See also Anticevic*, 2009 WL 361739, *5 (explaining provisions of Rule 316). Rule 316 of the CPLR also provides that the publication of the summons "shall be made within thirty days after the order is granted" and that "[s]ervice by publication is complete on the twenty-eighth day after the day of first publication." *Id.*

In the circumstances of this case, the Commission's proposal to publish the notice in the *International Herald Tribune*, which is based in New York, NY, is appropriate because it is widely read in the financial and investment communities. Given Prado's history of working as a registered securities professional, publication of notice in the *International Herald Tribune* is likely to provide him with notice of this action. The Commission also proposes to publish the notice in the *Miami Herald*, which is the largest newspaper in the area of Prado's last known residential and work addresses in Miami as well as where he continues to own real property. (Bergstrom Decl., ¶ 15, Ex. 9.) Once the notices have been published for four consecutive weeks in the newspapers, the Commission will submit to the Court proof of publication.

    ii.  **Service By Email Also Satisfies Constitutional Due Process Requirements**

The Commission's request for service by email also satisfies constitutional due process requirements. Courts have concluded service by email pursuant to Rule 4(f)(3) comports with due process. *Rio Properties,* 284 F.3d at 1017-1018 (court found that email was the most likely

12

method to reach a defendant who operated a website from Costa Rica with no discoverable street address there); *SEC v. Nagaicevs*, 2012 U.S. Dist. LEXIS 148983, *3-4 (N.D. Cal. Oct. 16, 2012) (authorizing service by email on an individual defendant because of his use of an email account for his securities transactions); *Liberty Media Holdings,* 2011 U.S. Dist. LEXIS 26657 (ordering that defendants in Brazil, whose physical address was unknown, may be served at their email addresses); *Philip Morris USA Inc. v. Veles Ltd.,* 2007 WL 725412, 2007 U.S. Dist. LEXIS 19780, * 9 (S.D.N.Y. Mar. 12, 2007) (because defendants corresponded regularly via email and email was likely to reach them, service by email was reasonably calculated to apprise defendants of the pending of the action); *Ryan v. Brunswick Corp*., 2002 WL 1628933 at *2 (W.D.N.Y. May 31, 2002) (allowing service by email on a defendant who conducted business through email).  Where, as here, a defendant is a sophisticated party who used email to engage in wrongdoing, service by email is particularly appropriate.  *Rio Properties,* 284 F.3d at 1017-18 (service by email satisfied the due process clause where defendant had "embraced the modern e-business model" and "designated its email address as its preferred contact information").

Prado testified before the Commission about his extensive personal and business use of email. (Bergstrom Decl., ¶ 9, Ex. 4.)  There is ample additional evidence of his use of email to:

1. carry out his alleged insider trading, including tipping others about the Burger King acquisition (Docket No. 1, ¶¶ 35, 41, 50, 51, 56; Docket No. 8, ¶¶ 5-6; Docket No. 9-0, ¶¶ 9-12);

2. communicate with Morgan Stanley about becoming an employee of the firm upon leaving Wells Fargo Advisors (Bergstrom Decl., ¶ 10, Ex. 5);

3. communicate with Morgan Stanley about his securities trading account after he provided his email address on the account opening documents (Bergstrom Decl., ¶ 11, Ex. 6); and

13

4. liquidate and attempt to liquidate his assets after he fled to Brazil, including assets from his Morgan Stanley account and the sale of his real property in Miami (Docket No. 9-0, ¶¶ 19, 25; Bergstrom Decl., ¶ 12, Ex. 7; ¶ 13, Ex. 8).

The Commission's counsel also communicated with Prado by email. On the day this action was filed, the Commission's counsel sent Prado emails that (a) advised him of the filing of this action or of the Commission's intention to seek an asset freeze against him and (b) provided him with copies of Court's Temporary Restraining Order entered September 20, 2012 and the Commission's complaint. (Bergstrom Decl., ¶ 6, Ex. 2.) Those emails did not "bounce back." (*Id*.) Based on Prado's pervasive use of email, serving him by email is reasonably calculated to give him notice of this action and satisfies due process requirements.[4]

### iii.   Service On Prado's Counsel Satisfies Due Process Requirements

Finally, the Commission also proposes to serve Prado by serving the attorneys he has previously authorized to contact the Commission by email and overnight mail. Under the circumstances of this case, this method of service is reasonably calculated to provide Prado with notice of service.

---

[4] The Commission's counsel has identified these email addresses as ones held and/or used by Prado since at least March 2012:  wspn@uol.com.br, wspn@ymail.com, waldyrprado@yahoo.com, and wspn007@gmail.com, which should be used to serve Prado with the summons and complaint if this motion is granted. (Bergstrom Decl., ¶ 14.)

14

## CONCLUSION

For the reasons set forth above, the Commission's motion for alternative service on Prado should be granted.

Dated: Los Angeles, California
June 21, 2013

/s/ Megan M. Bergstrom
Charles D. Riely
Megan M. Bergstrom
David S. Brown
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Suite 400
New York, New York 10281
(212) 336-0535