UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : <br> : |
| Plaintiff, | : <br> : |
| v. | : 12 CIV 7094 (KPF) |
| WALDYR DA SILVA PRADO NETO, | : <br> : |
| Defendant. | : <br> : <br> : |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
(1) MODIFY ASSET FREEZE TO PERMIT SALE OF DEFENDANT'S MIAMI
REAL PROPERTY AND (2) APPOINT A RECEIVER TO SELL THE REAL
<u>PROPERTY AND ORDERLY DISTRIBUTE SALE PROCEEDS</u>**

David S. Brown
Counsel for the Plaintiff
Securities and Exchange Commission
Los Angeles Regional Office
5670 Wilshire Blvd., 11th Floor
Los Angeles, CA 90036

January 30, 2014

# **TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................1

THE PROPERTY AT ISSUE ...............................................................................................2

ARGUMENT. ......................................................................................................................4

    I.    THE ASSET FREEZE SHOULD BE MODIFIED TO ALLOW
FOR THE SALE OF THE PROPERTY BY A
COURT-APPOINTED RECEIVER……………………..…………..4

        A.    Modification of the Asset Freeze........................................................4

        B.    Appointment of a Receiver to Sell the Property and Orderly
Distribute the Sale Proceeds to Bona Fide Claimants Subject
to Court Approval……………………………………………....…6

        C.    Sale of the Property and Distribution of the Sale Proceeds
Would Be a Two-Step Process Supervised by the Court……..…....9

    II.    THE COMMISSION RECOMMENDS THAT THE COURT
APPOINT SCOTT M. DIMOND, ESQ. AS RECEIVER ....................…..10

    III.    ASSUMING THE COURT GRANTS THE MOTION,
THE RECEIVER SHOULD BE ORDERED TO SUBMIT TO
THE COURT A PRELIMINARY PLAN FOR THE PROPERTY
WITHIN 30 DAYS ................................................................................11

CONCLUSION ...................................................................................................12

# **TABLE OF AUTHORITIES**

Page

**CASES**

*CFTC v. Fin. Risk Int'l, Inc.*,
   2008 U.S. Dist. LEXIS 105621 (S.D. Fla. Oct. 1, 2008) ................................................ 7

*SEC v. Am. Bd. of Trade, Inc.*,
   830 F.2d 431 (2d Cir. 1987) ........................................................................................... 5

*SEC v. Infinity Grp. Co.*,
   212 F.3d 180 (3d Cir. 2000) ........................................................................................... 5

*SEC v. Manor Nursing Ctrs., Inc.*,
   458 F.2d 1082 (2d Cir. 1972) ..................................................................................... 5, 6

*SEC v. Materia*,
   745 F.2d 197 (2d Cir. 1984) ........................................................................................... 5

*SEC v. Unifund SAL*,
   910 F.2d 1028 (2d Cir. 1990) ......................................................................................... 5

*SEC v. Wencke*,
   622 F.2d 1363 (9th Cir. 1980) ....................................................................................... 6

*Smith v. SEC*,
   653 F.3d 121 (2d Cir. 2011) ........................................................................................... 5

*United States v. Vulpis,*
   967 F.2d 734 (2nd Cir. 1992) ......................................................................................... 7

**FEDERAL STATUTES**

Section 22(a)
   [15 U.S.C §  77v(a)] ....................................................................................................... 4

Section 27
   [15 U.S.C. § 78aa] .......................................................................................................... 4

Plaintiff Securities and Exchange Commission (the "Commission") submits this memorandum of law in support of its motion to: (a) modify the asset freeze to allow for the sale of the real property held in the name of defendant Waldyr Da Silva Prado Neto ("Prado")[1] located at [Redacted] Aqua Avenue, Unit 703, Miami, Florida (the "Property") and (b) appoint a Receiver to sell the Property and to orderly distribute the sale proceeds to bona fide claimants subject to Court approval.

## BACKGROUND

At the time this action was filed in September 2012, Prado had fled to his native Brazil and had started liquidating his assets in the United States including listing the Property, his Miami condo, for sale for $1 million, which drew an offer of $810,000 on September 11, 2012. (Docket No. 7, pp. 8-9.) On September 20, 2012, the Court entered a temporary restraining order and other emergency relief against Prado including an asset freeze which halted the sale of the Property (Docket No. 3). On October 5, 2012, the Court entered an order of preliminary injunction and other relief against Prado including an asset freeze (Docket No. 15). At the direction of the Court, the Commission's counsel recorded with the Miami-Dade County Clerk-Recorder's Office the order of preliminary injunction in order to encumber the Property (Docket No. 16, ¶ 4).[2]

---

[1] On January 27, 2014, the United States Attorney for the Southern District of New York announced in a press release that it filed a criminal complaint against Prado and that he is believed to be in Brazil and has not been taken into custody. (Brown Affidavit, ¶ 22.)

[2] At the preliminary injunction hearing on October 4, 2012, the Honorable William H. Pauley III inquired whether the Commission placed a lien on the Property and commented: "I mean, that's where the assets are here. So immediately the SEC should ensure that the appropriate filings are made in the County Clerk's Office or wherever else they need to be made in Florida to ensure that the property isn't transferred." (Docket No. 17, p. 3, lines 18-22.)

1

On January 6, 2014, the Court held a hearing on the Order to Show Cause re entry of a default judgment against Prado at which time the Court made findings that Prado violated the federal securities laws. On January 7, 2014, the Court entered a Final Judgment against Prado which, among other things, found that the Court has jurisdiction over the parties and the subject matter of this action (Docket No. 46, p.1), and the Court continued the asset freeze on the Property (*Id*., ¶ III, p. 6) and ordered Prado to disgorge ill-gotten gains plus prejudgment interest and to pay civil penalties for his conduct that violated the federal securities laws, totaling over $5.6 million, (*Id*., p. 4). The Commission's counsel recorded on January 15, 2014 a copy of the Final Judgment with the Miami-Dade County Clerk-Recorder's Office. (Affidavit of David S. Brown filed concurrently herewith, ¶ 2.) Prado and his counsel were served on January 7, 2014 with the Final Judgment and the Court's notice of appeal letter. (Docket No. 47.)

## THE PROPERTY AT ISSUE

The Property is a three-bedroom/three-and-one-half bathroom condominium unit that Prado and his wife, Andrea Reis Batiston Da Silva Prado, purchased for $724,900 on or about July 16, 2010, of which $694,500 was financed through Wells Fargo Bank (the "Lender"). (Brown Affidavit, ¶ 3.)[3] It is unknown whether, or to what extent, Mrs. Prado currently has an interest in the Property, or whether a homestead exemption exists on the Property under Florida state law. (*Id*., ¶ 4.) Prado lived at the Property from

---

[3] The Property is located on Allison Island, an eight-and-one-half acre private island in Miami Beach. (Brown Affidavit, ¶ 7.) The website for the complex, known as Aqua, describes the site as being comprised of "3 midrise, waterfront condominiums and 46 island homes. With an equal balance of luxury and sophistication, AQUA promises a tropical lifestyle unparalleled by any community, anywhere." (*Id*.) Prado's condo is located on the seventh floor of the middle building, known as Spear, which is eleven stories high. (*Id*., ¶ 8.)

October 2010 through at least July 2012 (*Id.*, ¶ 3). He listed the Property for sale on August 27, 2012 and identified himself as the sole seller (*Id.*, ¶ 5). In mid-September 2012, the Commission staff was informed that Prado had fled to Brazil and indicated to his employer he was not coming back, citing the lack of an extradition treaty with the United States. (*Id.*, ¶ 7.) He was then terminated by his employer for abandoning his job. (*Id.*, ¶ 6.)

The Lender represents that it has not been paid since October 2, 2012, after the Court entered the asset freeze on the TRO, through January 31, 2014. (Brown Affidavit, ¶¶ 9.) The Lender represents that it is owed $457,609.66 ($402,651.36 as the principal balance on the mortgage, $26,360.86 in unpaid interest, $321.36 in late charges, and $28,276.08 for escrow advances including $26,308.54 in tax disbursements in 2013), and that $51.02 per day in interest is accruing on the Property. (*Id.*) The Lender recorded a notice of lis pendens against the Property, after the Court's asset freeze orders against Prado and after the Commission recorded the preliminary injunction with the Miami-Dade County Clerk-Recorder's Office. (*Id.*, ¶ 11.) Presumably the Lender also filed a foreclosure action in Florida state court at that time. The Lender supports the Commission's motion. (*Id.*, ¶ 10.)

The homeowners associations for the Property, Aqua Master Association, Inc. and the Spear at Aqua Condominium Association, Inc. (the "HOAs"), represent that they have not been paid since October 2012, after the Court entered the asset freeze on the TRO. (Brown Affidavit, ¶¶ 12-13.) The HOAs represent that from October 2010 through January 2014 they are owed $33,025.89 for the Property. (*Id.*, ¶ 13.) The HOAs represent that HOA fees accrue at the rate of $2,045.80 per month including assessments,

late fees, and other charges. (*Id.*) The HOAs support the Commission's motion. (*Id.*, ¶ 14.)

Property taxes on the Property are believed to be $14,031.56 per year. (Brown Affidavit, ¶ 15.) It appears the Lender has made certain tax disbursements in 2013 totaling $26,308.54. (*Id.*, ¶ 15).

Despite arrearages on the mortgage, HOA fees, and property taxes, it is believed there is significant value in the Property based on a recent comparable sale and current market conditions. (Brown Affidavit, ¶ 16.)[4] The Property is Prado's largest asset in the United States. (*Id.*, ¶ 17.) The Property is clean and vacant, which suggests it is ready to be marketed and sold. (*Id.*, ¶ 18.) The HOAs have not been in contact with Prado or his wife since December 2012. (*Id.*) Prado's former real estate agent has not been in recent contact with Prado either, but she has the keys to the Property. (*Id.*, ¶ 23.)

To date, the amounts paid under the Final Judgment total $59,176.97. (Brown Affidavit, ¶ 19.)

## ARGUMENT

II.   **THE ASSET FREEZE SHOULD BE MODIFIED TO ALLOW FOR THE SALE OF THE PROPERTY BY A COURT-APPOINTED RECEIVER**

A. **Modification of the Asset Freeze**

Section 22(a) of the Securities Act of 1933 and Section 27 of the Securities Exchange Act of 1934 "confer general equity powers upon the district courts" that are "invoked by a showing of a securities law violation." *SEC v. Manor Nursing Ctrs., Inc.*,

---

[4]   If appointed by the Court, the Receiver would be tasked with determining the legitimacy of amounts claimed to be owed to the Lender, the HOAs, and local taxing authorities. The amounts owed to the Commission are a matter of public record.

458 F.2d 1082, 1103 (2d Cir. 1972) (citing 15 U.S.C. §§ 77v(a), 78aa). "[O]nce the equity jurisdiction of the district court properly has been invoked, the court has power to order all equitable relief necessary under the circumstances," *SEC v. Materia*, 745 F.2d 197, 200 (2d Cir. 1984), "including the impoundment of assets," *SEC v. Am. Bd. of Trade, Inc*., 830 F.2d 431, 438 (2d Cir. 1987)).

The purpose of an asset freeze – as this Court ordered against Prado – is to ensure "that any funds that may become due can be collected." *SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990) (describing an asset freeze as "ancillary relief to facilitate enforcement of any disgorgement remedy that might be ordered in the event a violation [of securities laws] is established at trial"); *see also SEC v. Infinity Grp. Co*., 212 F.3d 180, 197 (3d Cir. 2000) ("A freeze of assets is designed to preserve the status quo by preventing the dissipation and diversion of assets.").

An order freezing assets, or an order modifying an asset freeze, is within the discretion of the district court. *Smith v. SEC*, 653 F.3d 121, 127 (2d Cir. 2011) *citing Am. Bd. of Trade, Inc*., 830 F.2d at 438. In *Smith* it was held that the federal securities laws authorized the court to exercise "broad equitable discretion" to fashion the appropriate injunctions when faced with alleged violations of the securities laws. *Smith*, 653 F.3d at 127 (citations omitted).

Here, this Court entered asset freeze orders against Prado (Docket Nos. 3 and 15) and directed the Commission to place a lien on the Property to prevent its transfer (Docket No. 17, p. 3, lines 18-22). That action was done to ensure that "funds that may be due can be collected." *Unifund SAL*, 910 F.2d at 1041. At the hearing on the Order to Show Cause re entry of a default judgment, the Court made findings that Prado violated

5

the federal securities laws. The Final Judgment entered against Prado continued the asset freeze over the Property and ordered Prado to disgorge ill-gotten gains of $397,110.01 plus prejudgment interest of $41,622.90, and to pay a civil penalty of $5,195,500. (Docket No. 46). Now, post-judgment, the Commission continues to hold a lien on the Property (Brown Affidavit, ¶ 2), but Prado's available funds and assets are insufficient to satisfy the Final Judgment (*Id.*, ¶ 19.) Accordingly, the asset freeze order should be modified to permit the orderly sale of the Property by a court-appointed Receiver in order to extract the existing value of the Property in light of its declining value and the diminishing equity due to the increasing arrearages of the unpaid mortgage, HOA fees, and property taxes. After sale of the Property, the Receiver will tasked with the orderly distribution of the sale proceeds to bona fide claimants, including the Commission, subject to Court approval. Two other likely claimants, the Lender and the HOAs, support the requested relief. (*Id.*, ¶¶ 10, 12.)

### B. Appointment of a Receiver to Sell the Property and Orderly Distribute the Sale Proceeds to Bona Fide Claimants Subject to Court Approval

It is well-settled that "federal courts have inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). Appointment of a Receiver is such relief. The Court has the discretion to appoint a Receiver to effectuate the purposes of the federal securities laws especially with respect to assets subject to a Court-ordered asset freeze. *Manor Nursing*, 458 F.2d at, 1105. The appointment of a Receiver for purposes of aiding in the execution of a federal judgment, including the sale

of the defendant's real estate after judgment has been entered, is an accepted practice. *See United States v. Vulpis,* 967 F.2d 734 (2nd Cir. 1992).

The decision in *CFTC v. Fin. Risk Int'l, Inc.*, 2008 U.S. Dist. LEXIS 105621 (S.D. Fla. Oct. 1, 2008) is particularly helpful.  A final judgment was entered against defendants in a Commodity Futures Trading Commission enforcement action, which imposed relief including payment of $3.1 million in restitution.  The Court, in furtherance of the CFTC's efforts to enforce the federal commodities laws, appointed a Receiver for the purpose of supervising the sale of certain real property owned by one of the defendants in order to satisfy the restitution order.  *Fin. Risk Int'l*, 2008 U.S. Dist. LEXIS 105621 * 20-22.  The Court further ordered that the Receiver – under Court supervision – shall preserve, hold, and manage the proceeds from the sale of the defendant's real estate, among other undertakings, in order to satisfy the final judgment.  *Id.* at 24-27.  The Court ordered that the Receiver was, subject to Court approval, entitled to reasonable compensation for the performance of his duties.  *Id.* at 24-25.

Here, the Commission seeks the appointment of a Receiver solely to supervise the sale of the Property and to orderly distribute the sale proceeds to bona fide claimants subject to Court approval.  There are several reasons that justify the appointment of a neutral, limited-purpose, third-party Receiver to accomplish those tasks.  First, given Prado's conduct liquidating his U.S. assets and fleeing to Brazil before the Commission filed this action, it will be difficult without the appointment of a Receiver to implement that portion of the Court's orders that Prado disgorge ill-gotten gains and pay civil penalties from the equity in the Property.  The Property is Prado's largest asset in the United States (Brown Affidavit, ¶ 17) and payments made under the Final Judgment to

date are insufficient to satisfy the Final Judgment. (*Id.*, ¶ 19.) A Receiver is best-suited to supervise the sale of this Property.

Second, potentially complicating the Court's orders that Prado disgorge ill-gotten gains and pay a civil penalty from the equity in the Property is the conduct of the Lender, which recorded a lis pendens on the Property after the Court entered the asset freeze orders and after the Commission recorded the preliminary injunction with the Miami-Dade County Clerk-Recorder's Office thereby placing a lien on the Property. (Brown Affidavit, ¶ 11.) A Receiver is best-suited to deal with title and other issues related to the sale of the Property and to propose to the Court resolution of the competing claims to the sale proceeds by the Commission and the Lender (and others like the HOAs). The Lender and the HOAs support the requested relief. (*Id.*, ¶¶ 10, 12.)

The fact that Prado chose to flee to Brazil and remain there during the pendency of this action and elect not to contest the Commission's enforcement action, is no impediment to the relief requested by the Commission. This Court has found that it has personal jurisdiction over Prado and subject matter jurisdiction over this matter. (Docket No. 46, p.1.) The Court entered an asset freeze over Prado's assets and entered a Final Judgment against him. (*Id.*) The Commission holds a lien on the Property through its Final Judgment that requires Prado to pay disgorgement and other monetary relief, which it seeks to enforce. (Brown Affidavit, ¶¶ 2, 19.) Prado would continue to receive notice of the post-judgment proceedings proposed by the Commission.[5]

---

[5] The Commission's counsel believes it would be appropriate for the Court to order that the Commission give notice to Prado and his wife of the motion for sale of the Property and the motion to distribute the sale proceeds by (a) email to Prado and his counsel and overnight mail to his U.S. counsel; and (b) publication in the *International Herald Tribune* in a manner consistent with Florida state law. Service would also be

Accordingly, the Court would be justified in deciding that these circumstances warrant the appointment of a Receiver with specific powers over the sale of the Property and to orderly distribution the sale proceeds to bona fide claimants subject to Court approval.

### C. Sale of the Property and Distribution of the Sale Proceeds Would Be a Two-Step Process Supervised by the Court

If the Court is inclined to grant this motion, the Commission proposes that the Receiver's sale of the Property at fair market value, and then distribution of the sale proceeds, be a two-step process supervised by the Court which Prado would receive notice of.[6]  (The Commission has lodged a proposed Order with this motion.)

First, the Receiver would be empowered to retain the services of a real estate agent to market the Property at fair market value and the Receiver would be required to file with the Court and serve on all parties a copy of any contract for sale of the Property within five days of its execution.  Within seven days of filing the contract, the Commission or the Receiver shall file a motion seeking authorization to sell the Property under the terms of the contract.  The Property shall not be sold except by Order of this Court following a hearing and an opportunity for all parties to the action to be heard on the proposed sale.

Second, the Receiver would be authorized to establish segregated, interest-bearing custodial account(s) at a federally insured bank to receive and hold proceeds from the sale of the Property.  These funds, together with any interest earned thereon, shall be held by the Receiver until further order of this Court.  The Receiver would be empowered to investigate the identities of persons or entities that have claims to the sale proceeds from the sale of the Property and shall

---

made on Prado's counsel who have contacted the Commission, Thomas McGonigle and Ricardo Arce.

[6]  *See* footnote 5 for the Commission's position on service on Prado.

9

verify the legitimacy, and amounts, of those claims.  Within five days of receipt of the sale proceeds, the Receiver would be required to file with the Court and serve on all parties and interested persons a proposed list of distributions to be made from the sale proceeds.  The proposed distribution list must include persons or entities that the Receiver has determined have bona fide claims to the sale proceeds.  Within seven days of filing the proposed distribution list, the Commission or the Receiver shall file a motion seeking authorization to distribute the funds as set forth on the proposed distribution list.  The proceeds from the sale of the Property shall not be distributed except by Order of this Court following a hearing and an opportunity for all parties and interested persons to be heard on the proposed distribution.

### III. THE COMMISSION RECOMMENDS THAT THE COURT APPOINT SCOTT M. DIMOND, ESQ. AS RECEIVER

The Commission's counsel interviewed five potential Receiver candidates in the Miami area.  (Brown Affidavit, ¶ 20.)  The Commission recommends that Scott M. Dimond, Esq. of Dimond, Kaplan & Rothstein, P.A., Attorneys at Law, of Miami, Florida, serve as Receiver over the Property for several reasons.  (*Id*.)  First, both he and his firm have experience as both a Receiver and representing Receivers in large and complex receiverships in similar enforcement actions brought by the Commission and other agencies.  (*Id*.)  Second, Mr. Dimond has indicated he understands the nature of the tasks at hand and has identified a plan for handling this matter.  (*Id*.)  Third, Mr. Dimond has proposed reduced billing rates that are reasonable in light of the tasks at hand.[7]  (*Id*.)

The Commission proposes that the Receiver, subject to Court approval, shall be entitled to reasonable compensation for the performance of duties and reimbursement of

---

[7] If the Court is inclined to consider an alternate to Mr. Dimond, the Commission also recommends Melanie Damian, Esq. of Damian & Valori, LLP, Attorneys at Law, of Miami, Florida.  (Brown Affidavit, ¶ 21.)

necessary costs incurred in furtherance of the order appointing the Receiver, and that professionals hired by the Receiver (which would foreseeably include a real estate agent), shall be entitled to reasonable compensation for the performance of their duties and reimbursement of necessary costs incurred subject to Court approval.  The Commission proposes that such compensation would be paid from the sale proceeds of the Property.

### IV.    ASSUMING THE COURT GRANTS THE MOTION, THE RECEIVER SHOULD BE ORDERED TO SUBMIT TO THE COURT A PRELIMINARY PLAN FOR THE PROPERTY WITHIN 30 DAYS

If the Court appoints a Receiver, the Receiver should be given the opportunity to submit to the Court a preliminary plan with respect to the Property providing, among other things, a status report on: (a) coordination with the Lender and the HOAs, and possibly with Prado and his wife; (b) retention of a real estate agent to market the Property; (c) any potential impediments to sale; (d) mechanisms by which Prado and his wife will be given notice of any sale of the Property under Florida law, assuming they do not cooperate with the Receiver; and (e) and any other relevant matter.  The Receiver should thereafter submit status reports to the Court no less than every 60 days, unless there has been a material change in circumstances.

///
///
///
///
///
///

## CONCLUSION

The Commission respectfully requests that the Court grant this application and enter the proposed Order to: (a) modify the asset freeze to allow for the sale of the real property held in Prado's name located at Redacted Aqua Avenue, Unit 703, Miami, Florida and (b) to appoint a Receiver to have sole authority to sell the Property and orderly distribute the sale proceeds to bona fide claimants subject to Court approval.

Dated: Los Angeles, California
      January 30, 2014

David S. Brown
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Los Angeles Regional Office
5670 Wilshire Blvd., 11th Floor
Los Angeles, CA 90036
(323) 965-3321