UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : 12-CV-07094 |
| WALDYR DA SILVA PRADO NETO, | : |
| Defendant. | : |

## FIRST STATUS REPORT OF RECEIVER

Court-Appointed Receiver Scott M. Dimond (the "Receiver"), pursuant to this Court's "Order Modifying Asset Freeze to Allow Sale of Defendant's Miami Real Property and Appointing Receiver to Sell the Real Property and Orderly Distribute Sale Proceeds" dated February 7, 2014 [D.E. 60] (the "Sale Order"), hereby files this First Status Report of Receiver, which includes a summary of the Receiver's efforts during the first thirty days of his appointment and the undersigned's preliminary plan for the fair, reasonable, and efficient liquidation of the Property.

### Summary of Receiver's Actions to Date

Redacted

The Receiver was appointed for the purpose of liquidating the real property located at ▇ Aqua Avenue, Unit 703, Miami Beach, Florida, APN 02-3211-077-0290 (the "Property") in an manner intended to maximize the value of the Property's sales proceeds.

In compliance with the Order, the undersigned has taken the following steps to secure the

Property and prepare it for sale:

    a.    Secured the Property by changing the locks and registering with the management office of the building in which the Property is located;

    b.    Personally inspected the property and confirmed that it was empty and in good condition;

    c.    Retained real estate transactional counsel, Michael Tobin, Esq. of Rothman & Tobin, P.A., to conduct a title search of the Property and to assist with any eventual sale transaction of the Property as approved by this Court. The Receiver and his firm have experience with Mr. Tobin in connection with South Florida real-estate transactions, and he is familiar with the Miami-Beach market and transactions of the type expected here. Mr. Tobin has agreed to assist in connection with this matter at a reduced hourly rate, and his resume and retainer agreement will be made available to the Court upon request;

    d.    Reviewed the title search together with counsel to ascertain the existence of any known liens, of which only the first mortgage held by Wells Fargo was in evidence;

    e.    Filed a motion to Intervene and Stay (the "Stay Motion") in the Florida state court case of *Wells Fargo Bank (NA) v. Waldyr Da Silva Prado Neto, et al.*, Case No.: 13-3890-CA-42, pending before Judge Victoria S. Sigler in the Eleventh Judicial Circuit of the State of Florida, the purpose of which is to prevent any other parties from pursuing competing liens on the Property, and noticing the Stay Motion for hearing before Judge Sigler on Wednesday, March 12, 2014 at 9:00 a.m.;

    f.    Contacted counsel for Wells Fargo Bank, N.A. to confirm that the bank will not

object to the Receiver's Stay Motion, which discussions are ongoing as of the time of this filing;

g. Filed a notice of *lis pendens* to provide additional notice to any persons potentially interested in the Property of the Receiver's rights with respect to the Property under the Sale Order;

h. Selected three appraisers to retain in order to comply with the requirements of 28 U.S.C. §2001(b) (as detailed below); and

i. Is in the process of retaining Jill Hertzberg of Coldwell Banker – one of Miami's premier realtors with extensive experience with the Miami Beach market in general and the condominium complex in which the Property is located in particular – to market the Property. Coldwell Banker is the largest residential real-estate brokerage in the country, and Ms. Hertzberg's group ranked first among all Coldwell Banker residential teams worldwide in 2012 and was listed as the top team in the United States by the Wall Street Journal in 2012. Ms. Hertzberg's team has sold multiple condominium and townhouse units in the complex containing the Property, and will market the Property by use of the Multiple Listing Service, holding personal open-houses, and via the group's extensive on-line and print marketing outlets. The Receiver is personally familiar with Ms. Hertzberg and her team, and she has agreed to work at a reduced commission here. Ms. Hertzberg's resume and listing agreement will be made available to the Court upon request.

### Preliminary Plan for Sale of Property

The Receiver believes that the best mechanism for maximizing the value of the Property would be a private sale rather than a public auction. The process by which a Receiver may sell real property is specifically delineated in 28 U.S.C. §2001(a), the federal judicial sale statute. That provision provides for a procedure for sale by public auction, which states, in pertinent part:

> Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs. <u>Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed, at the courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such court directs</u>, unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts.[1]

But the statute also provides for an alternative means to that auction process under §2001(a), to wit, a private sale under 28 U.S.C. §2001(b):

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. <u>Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value</u>. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

---

[1] 28 U.S.C. §2001(a) (emphasis added).

The Receiver intends to seek permission to sell the Property in accordance with the procedure set forth in subsection 2001(b), which applies to all sales by a Receiver except those in bankruptcy cases and those involving a Receiver appointed by the Comptroller of the Currency.[2]

In order to accomplish that private sale, the Receiver plans to take the following steps:

a. File a motion to seek this Court's approval for retention of three appraisers whose opinion is a prerequisite to any final sale approval (expected to be completed by March 14, 2014);

b. Select an offering price and begin marketing the Property with the chosen realtor (expected to be completed by March 14, 2014);

c. Obtain an order granting the Stay Motion (expected by March 12, 2014);

d. Open a bank account (expected to be completed by March 21, 2014);

e. Upon this Court's approval of three appraisers, retain each to appraise the Property (expected to be completed within 20 days of the Court's approval of the appraisers);

f. Identify a proposed purchaser that the Receiver believes to have offered the best combination of price and other pertinent terms following negotiation, which price will be at least two-thirds of the average appraised value provided by the three appraisers; and

g. prepare and file a Motion to Approve Sale (the "Sale Motion") in accordance with 28 U.S.C. §2001(b), provide notice of the Sale Motion in accordance with the Sale Order, and request a hearing from this Court to approve the requested sale, with a subsequent closing to be handled by the Receiver's chosen real estate counsel.

---

[2] *See SEC v. Kirkland*, 2007 WL 624278 at *2 (S.D. Fla. 2007).

## Conclusion

While the foregoing is not intended to be an exhaustive description of the efforts undertaken by the Receiver since his February 7, 2014 appointment, this Report should provide this Court with a comprehensive summary of the Receiver's primary activities and accomplishments to date, as well as his plan for the fair, reasonable, and efficient liquidation of the Property.

The Receiver and his team are committed to complying with this Court's existing and future orders, and are working diligently to bring this matter to an efficient and equitable conclusion. The Receiver will file further interim reports in compliance with the Sale Order, and of course will provide the Court with any additional information upon request.

By: _____

Scott M. Dimond, Esq.
Fla. Bar No.: 995762
SDimond@dkrpa.com

Dimond Kaplan & Rothstein, P.A.
Offices at Grand Bay Plaza
2665 South Bayshore Drive, PH-2B
Coconut Grove, Florida 33133
Telephone:  (305) 374-1920
Facsimile:  (305) 374-1961