UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | :    12-CV-07094 (KPF) |
| WALDYR DA SILVA PRADO NETO, | : |
| Defendant. | : |

RECEIVER'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR COURT APPROVAL OF PROCEDURE FOR CLOSING
AND DISTRIBUTION OF SALE PROCEEDS

August 5, 2014

Scott M. Dimond, Esq.
  Court-appointed Receiver
Dimond Kaplan & Rothstein, P.A.
Offices at Grand Bay Plaza
2665 South Bayshore Drive, PH-2B
Coconut Grove, Florida 33133
Telephone:    (305) 374-1920
Facsimile:    (305) 374-1961

Receiver Scott M. Dimond (the "Receiver") submits this Memorandum of Law in support of his Motion for Court Approval of Procedure for Closing and Distribution of Sale Proceeds (the "Motion").

**BACKGROUND**

This Court's "Order Modifying Asset Freeze to Allow Sale of Defendant's Miami Real Property and Appointing Receiver to Sell the Real Property and Orderly Distribute Sale Proceeds" dated February 7, 2014 [D.E. 60] (the "Sale Order") appointed the undersigned to act as a fiduciary receiver for the purpose of securing and liquidating a condominium located at 6103 Aqua Avenue, Unit 703, Miami Beach, Florida, APN 02-3211-077-0290 (the "Property"). That appointment empowered the Receiver to take such actions as were reasonably necessary to realize the true and proper value of the Property.

The Receiver's efforts to market and sell the Property resulted in an April 17, 2014 contract to sell the Property for $1,205,000 (the "Contract"). Following the procedure set forth in this Court's Sale Order and pertinent federal authority for approving the Contract, this Court held a hearing on June 25, 2014 and thereafter approved the Contract by its Order Granting Receiver's Motion for Court Approval of Private Sale Pursuant to 28 U.S.C. § 2001(b) (the "Sale Approval Order"). [D.E. 99]. The Sale Approval Order also set a hearing for September 8, 2014 to consider the Receiver's proposed distribution of proceeds from the closing of the Contract.

The Receiver served the Sale Approval Order on all parties and other interested persons (and their respective counsel) – including defendant Waldyr Da Silva Prado Neto ("Mr. Prado") and his wife Andrea Reis Batiston Da Silva Prado ("Mrs. Prado") – of which the Receiver is

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 · TEL. 305.374.1920 FAX. 305.374.1961

aware [D.E. 89, 93], and the Receiver solicited claims to the sale proceeds from those parties and interested persons. *See* Affidavit of Receiver in Support of the Motion, attached as Exhibit A.

As detailed herein, in response to that request for claims the undersigned ultimately received claims from Wells Fargo Bank (NA) ("Wells Fargo"), the two pertinent condominium associations, Spear at Aqua Condominium Association, Inc. and the Aqua Master Condominium Association, Inc. (collectively, the "Aqua Associations"), and the Securities and Exchange Commission (the "Commission"). *See* Exhibit A and claims attached as exhibits thereto. Because claims from Wells Fargo and the Aqua Associations increase with the passage of time, those claims reflect amounts that would be owed as of a proposed September 10, 2014 closing date as detailed below. *Id.*  The Receiver determined, in accordance with his authority under Paragraph II(F) of the Sale Order, that the claims received from Wells Fargo, the Aqua Associations, and the Commission are legitimate and they are each *bona fide* claimants to the proceeds from the sale of the Property. *See* Affidavit of Receiver. The Receiver did not receive claims submitted by or on behalf of Mr. Prado or Mrs. Prado.  *Id.*

### PROPOSED REVISION TO SALE ORDER PROCEDURE

The Sale Order contemplated that a closing would occur following Court approval of any contract on the Property and that the Receiver would then seek this Court's approval of a plan of distribution of the resulting sale proceeds. That procedure included the Receiver submitting a proposed plan of distribution of the sale proceeds to the Court within five (5) days of the sale closing and then filing a motion seeking to approve the proposed distribution within seven (7) days thereafter, with all such filings being served both directly on the parties and other interested persons and via publication. The Court would then hold a hearing on the Receiver's distribution motion.  *See* Sale Order, Paragraph II(G-J).

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 · TEL. 305.374.1920 FAX. 305.374.1961

But following this Court's approval of the Contract, the undersigned learned that it would be difficult if not impossible to conduct a closing of the Property prior to the Court's approval of a distribution because of the existence of the secured lender. Specifically, because Wells Fargo is a secured lender entitled to payment of its mortgage loan as part of the closing process, it would be difficult if not impossible for the buyer to obtain title insurance unless Wells Fargo were to be paid out of the closing itself. As such, the procedure proscribed by the Sale Order -- *i.e.,* contract approval, followed by closing, followed later by approval of distributions from the closing -- has proven to be untenable as a practical matter, which may have caused the proposed sale to fall through.

The Receiver therefore recommends that the Court's procedure should be modified in such a way as to satisfy the intent of the Sale Order and still allow for an orderly closing and distribution of proceeds as the Sale Order contemplated. Specifically, the Receiver hereby proposes that the Court first approve all distributions to the *bona fide* claimants identified herein that would ordinarily be made as part of the closing itself, and then the closing would occur immediately following the Court's approval of those distributions. As detailed below, the Receiver now seeks this Court's approval for a plan of distribution of sale proceeds to be implemented as part of a September 10, 2014 sale closing.

### ARGUMENT IN SUPPORT OF RECEIVER'S PLAN OF DISTRIBUTION FROM CLOSING

Based on the claims to the sale proceeds that he has received and determined to be legitimate, the Receiver makes the following proposal for a distribution of funds from closing on the Property.

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 · TEL. 305.374.1920 FAX. 305.374.1961

## A.      The Receiver's Proposed Plan of Distribution

From the total sale proceeds of $1,205,000, the Receiver proposes to make the following distributions at closing:

### 1.      **Distribution to Wells Fargo**:

The Receiver proposes that a total of **$473,438.35** be distributed to the secured lender Wells Fargo from closing. *See* Wells Fargo pay-off letter, exhibit 1 to Receiver's Affidavit.

### 2.      **Distribution to Spear and Aqua Master Associations:**

The Receiver proposes that a total of **$49,225.25** be distributed to the Aqua Associations for past-due association assessments, fees, and costs. That total payment is comprised of $26,514.08 to be paid to the Spear at Aqua Condominium Association, Inc. and $22,711.17 to be paid to the Aqua Master Condominium Association, Inc. *See* Aqua Associations claim, exhibit 2 to Receiver's Affidavit.

### 3.      **Payment of Real Estate Commissions and Other Closing Costs:**

The Receiver proposes that a total of **$73,997.50** in real-estate commissions and other closing costs -- all as detailed in the draft HUD-1 closing statement (the "HUD-1") prepared by Receiver's real estate counsel -- be distributed at closing, and that the closing otherwise be authorized to proceed in accordance with that closing statement. *See* HUD-1, exhibit 4 to Receiver's Affidavit.

The Receiver is presently not aware of any closing costs or other charges that will be paid at closing beyond those set forth in the HUD-1. But in an abundance of caution and in the hope of avoiding any threat to closing on the sale, the Receiver further seeks authorization to pay at closing any presently unknown costs, charges, liens, or other expense that hereafter arise in connection with the closing that are appropriate and necessary not to exceed five percent (5%) of

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 · TEL. 305.374.1920 FAX. 305.374.1961

the Contract price. *See* Sale Order at ¶¶III(c) and (e) (providing the Receiver with the power to authorize payments and disbursements "as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver" and to take such other "action as necessary and appropriate for the preservation of the Property"). The Receiver further proposes that in advance of the September 8th hearing he would provide the Court with then-latest version of the HUD-1 if any revisions to the HUD-1 are made between this filing and that hearing, and that he would file the final version of the HUD-1 with the Court following the September 10th closing.

    4.      **Distribution to the Commission:**

    The Commission filed a claim with the Receiver totaling $5,448,479, representing the unpaid balance Mr. Prado owes the Commission under the final judgment entered in this action. *See* Commission's claim, exhibit 3 to Receiver's Affidavit. As such, the Commission's claim well exceeds the funds that will remain after distributions to the lender and associations and payment of any and all other closing costs, making the Commission the only claimant that will not receive the full value of its claim.

    The Receiver proposes that the balance of the sale proceeds remaining after the distributions and closing procedures reflected in paragraphs A(1)-(3) above be set aside toward payment of the Commission's claim. Those funds would be paid to a Receivership account to be held by the undersigned, as permitted under Paragraph II.E of the Sale Order, pending a motion from the Receiver and final order from this Court approving payment of the undersigned's own fees and costs from that account. The Commission would thereafter receive the net balance of the Receivership account. Counsel for the Commission has represented to the undersigned that the Commission does not oppose the foregoing proposed distribution and procedure for distribution.

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 · TEL. 305.374.1920 FAX. 305.374.1961

The proposed distributions and procedure for distributions detailed above is referred to hereinafter as the "Proposed Distribution Plan."

**B.      The Receiver's Distribution Plan Is Fair, Equitable, and Would Serve to Maximize the Receivership Estate**

The Receiver believes that the Proposed Distribution Plan is fair to all known claimants and would maximize the ultimate recovery for the Receivership estate as contemplated by the Sale Order. All known potential claimants, including Mr. Prado and Mrs. Prado, have been apprised of the foregoing procedure and either have made claims or, as in the case of Defendant and his wife, have remained silent in the face of the Receiver's request that claims be submitted.

Of the claims that were submitted to the undersigned, all were deemed to be valid and legitimate by the Receiver and all claimants would receive 100% of their claimed amount, with the sole exception of the Commission, which has a claim far in excess of the value of the entire Property. And the Commission supports the Proposed Distribution Plan, which would permit an orderly distribution of the proceeds of the sale without the need for further litigation.

**C.      The Proposed Notice Is Fair and Adequate**

Section II(H) of the Sale Order requires that notice of the motion seeking authorization to distribute the sale proceeds must be "reasonably designed to give [Mr. and Mrs. Prado] notice of the relief sought in the motion and [must] comport[] with any requirements under Florida state law." As detailed below, the Receiver's Notice (attached as Exhibit B) complies with the Sale Order as to form by specifying the claimants to be paid pursuant to the Proposed Distribution Plan and that Mr. Prado and Mrs. Prado will be served directly by email and via publication to provide appropriate advance notice of the hearing on the Motion.

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 · TEL. 305.374.1920 FAX. 305.374.1961

While a sale of the Property pursuant to the Contract already has been approved, the Receiver proposes to follow the same procedure that was used to provide notice of that sale in connection with the immediate Motion to approve the Proposed Distribution Plan. Notice previously was provided that conformed with: (a) Fla. Stat. §45.031, providing that notice must be provided in a local paper of general circulation in the county where the sale is being held once a week for two consecutive weeks, with the second publication being at least five (5) days before the sale; (b) 28 U.S.C. §2001(b), which provides: "[b]efore confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation"; and (c) the Sale Order, which requires any answering papers to be served two weeks prior to the date set for hearing and which identified a publication appropriate for notice in light of the particular circumstances of this case, *i.e.*, *The International New York Times*.

As such, the Receiver proposes to publish the notice attached as Exhibit B in the International New York Times once a week for two consecutive weeks, with the second publication to occur no later than three weeks prior to the hearing on the Motion. That schedule would provide more than adequate notice under both Fla. Stat. §45.031 and 28 U.S.C. §2001(b) (to the extent either is applicable by analogy), and still provide any interested person with a full week to prepare answering papers in advance of their submission deadline.

Finally, a copy of the Motion is being served by e-mail as reflected in the certificate of service below. More specifically, notice of the Motion will be given via e-mail to the known e-mail addresses for Mr. Prado and Mrs. Prado, as well as to counsel as set forth in the Sale Order at Paragraph II(H), and by email to counsel for Wells Fargo, the Aqua Associations, and the Commission.

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 · TEL. 305.374.1920 FAX. 305.374.1961

By following the forgoing procedure, the Receiver believes that he will have given notice of the Motion and the hearing thereon by the best and most practicable methods available and otherwise be in compliance with the Sale Order.

## CONCLUSION

In light of all the foregoing and pursuant to this Court's Sale Order and Sale Approval Order, the Receiver hereby requests that this Court approve the Plan of Distribution detailed herein at the hearing scheduled for September 8, 2014.

Respectfully submitted,

By: _____

Scott M. Dimond, Esq.
Fla. Bar No.: 995762
SDimond@dkrpa.com

Dimond Kaplan & Rothstein, P.A.
Offices at Grand Bay Plaza
2665 South Bayshore Drive, PH-2B
Coconut Grove, Florida 33133
Telephone:     (305) 374-1920
Facsimile:      (305) 374-1961

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 · TEL. 305.374.1920 FAX. 305.374.1961

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 12-CV-07094 (KPF) |
| | : | |
| WALDYR DA SILVA PRADO NETO, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

## RECEIVER'S DECLARATION IN SUPPORT OF MOTION FOR COURT APPROVAL FOR CLOSING AND DISTRIBUTION OF SALE PROCEEDS

I, Scott M. Dimond, pursuant to 28 U.S.C. §1746, declare as follows:

1.      I was appointed by the United States District Court for the Southern District of New York in S.D. N.Y. Case No. 12-CIV-7094 as receiver over real property located at 6103 Aqua Avenue, Unit 703, Miami, Florida (the "Property") pursuant to this Court's "Order Modifying Asset Freeze to Allow Sale of Defendant's Miami Real Property and Appointing Receiver to Sell the Real Property and Orderly Distribute Sale Proceeds" dated February 7, 2014 [D.E. 60] (the "Sale Order").

2.      More specifically, by its Sale Order, this Court appointed me to act as a fiduciary receiver for the limited purpose of securing and liquidating the Property.

3.      That appointment empowered me to take such actions as were reasonably necessary to maximize the Property's value.

4.      My efforts to market and sell the Property resulted in an April 17, 2014 contract to sell the Property for $1,205,000 (the "Contract").



EXHIBIT
"A"

5.      Following the procedure set forth in this Court's Sale Order and pertinent federal authority for approving the Contract, this Court held a hearing held on June 25, 2014 and thereafter approved the Contract by its Order Granting Receiver's Motion for Court Approval of Private Sale Pursuant to 28 U.S.C. § 2001(b) (the "Sale Approval Order"). [D.E. 99].

6.      The Sale Approval Order also set a hearing for September 8, 2014 to consider the Receiver's proposed distribution of proceeds from the closing of the Contract.

7.      Thereafter, I served the Sale Approval Order on all parties and other interested persons (and their respective counsel) of which I am aware, including the Defendant Waldyr Da Silva Prado Neto ("Mr. Prado") and his wife Andrea Reis Batiston Da Silva Prado ("Mrs. Prado"), and I solicited claims to the sale proceeds from those parties and interested persons. After service of the Sale Approval Order, I was not contacted by Mr. Prado or Mrs. Prado or by any counsel acting on their behalf. As a result, I have not received claims to the sale proceeds from either Mr. Prado or Mrs. Prado.

8.      In response to that request for claims, I received claims from Wells Fargo Bank (NA) ("Wells Fargo"), the two pertinent condominium associations, Spear at Aqua Condominium Association, Inc. and the Aqua Master Condominium Association, Inc. (collectively, the "Aqua Associations"), and the Securities and Exchange Commission (the "Commission"). *See* Exhibits 1, 2, and 3, attached hereto.

9.      I found all of the attached claims to reflect *bona fide* claims that I believe should be paid in connection with a closing on the Property.

10.     The original Sale Order contemplated that a closing would occur following Court approval of any contract on the Property and that I would then seek this Court's approval of a plan of distribution of the resulting sale proceeds in response to those claims. Thus the Sale

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 · TEL. 305.374.1920 FAX. 305.374.1961

Order contemplated a proposed plan of distribution of the sale proceeds to the Court within five (5) days of the sale closing and then filing a motion seeking to approve the proposed distribution within seven (7) days thereafter, with all such filings being served both directly on the parties and other interested persons and via publication. The Court would then hold a hearing on my putative distribution motion.

11.     But following this Court's approval of the Contract, I learned that it would be difficult if not impossible to conduct a closing of the Property prior to the Court's approval of a distribution because of the existence of a secured lender.

12.     More specifically, because Wells Fargo is a secured lender entitled to payment of its mortgage loan as part of the closing process, it would be difficult if not impossible for the buyer to obtain title insurance unless Wells Fargo were to be paid out of the closing itself.

13.     As such, the procedure proscribed by the Sale Order -- i.e., contract approval, followed by closing, followed later by approval of distributions from the closing -- has proven to be untenable as a practical matter.

14.     But I believe that the Court's procedure could be modified in such a way as to satisfy the original intent of the Sale Order and still allow for an orderly closing and distribution of proceeds.

15.     Specifically, I believe that the Court should first approve all distributions that would ordinarily be made as part of the closing itself, and then the closing would occur immediately following the Court's approval of those distributions.

16.     To that end, based on the claims to the sale proceeds that I have received, I propose the following distribution of the $1,205,000 in funds from closing on the Property:

3 of 6

a.      I propose that a total of $473,438.35 be distributed to the secured lender Wells Fargo. *See* Wells Fargo pay-off letter, attached as Exhibit 1.

b.      I propose that a total of $49,225.25 be distributed to the Aqua Associations for past-due association assessment, fees, and costs (with that total payment being comprised of $26,514.08 to be paid to the Spear Association and $22,711.17 to be paid to the Master Association). *See* Aqua Association claims, attached as Exhibit 2.

c.      I propose that a total of $73,997.50 in real estate commissions, closing costs, and taxes -- all as detailed in the draft HUD-1 closing statement prepared by Receiver's real estate counsel (the "HUD-1") be distributed at closing. *See* HUD-1, attached as Exhibit 4.

17.     I am not presently aware of any closing costs or other charges that will be paid at closing beyond those set forth in the HUD-1. But in an abundance of caution and in the hope of avoiding any threat to closing on the sale, I seek authorization to pay at closing any presently unknown costs, charges, liens, or other expense that hereafter arise in connection with the closing that are appropriate and necessary, as permitted pursuant to the fiduciary authority granted me in the Sale Order, not to exceed five percent (5%) of the Contract price.

18.     The Commission is the last remaining claimant to the sale proceeds and has filed a claim with me and that claim totals $5,448,479. *See* Commission claim, attached as Exhibit 3.

19.     The Commission's claim well exceeds the funds that will remain after distributions to the lender and associations and payment of other closing costs, making the Commission the only claimant that will not receive the full value of its claim.

20.     I propose that the balance of the sale proceeds remaining after the above-referenced distributions be paid to a Receivership account to be held by the undersigned as permitted under the Sale Order pending a motion and final order from this Court regarding

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 · TEL. 305.374.1920 FAX. 305.374.1961

payment of my own fees and costs from that account. The Commission would thereafter receive the net balance of the Receivership account.

21.     I believe that the proposed distribution plan is fair to all known claimants and would maximize the ultimate recovery for the Receivership estate as contemplated by the Sale Order. All known potential claimants, including Mr. Prado and Mrs. Prado, will be apprised of the foregoing procedure and either will have made claims or, as in the case of Defendant and his wife, will have remained silent in the face of the Receiver's request that claims be submitted.

22.     Of the claims that were submitted to the undersigned, all were deemed to be valid and legitimate and all claimants would receive 100% of their claimed amount, with the sole exception of the Commission, which has a claim far in excess of the value of the entire Property. Still, the Commission supports the proposed distribution plan, which would permit an orderly distribution of the proceeds of the sale without the need for further litigation.

23.     Last, Section II(H) of the Sale Order requires that notice of the motion seeking authorization to distribute the sale proceeds must be "reasonably designed to give [Mr. and Mrs. Prado] notice of the relief sought in the motion and [must] comport[] with any requirements under Florida state law." I intend to follow the method for giving noticed detailed in the Motion as the best and most practicable methods available that is in compliance with the Sale Order. Specifically, I intend to publish the notice attached as Exhibit B to the Memorandum in the International New York Times once a week for two consecutive weeks, with the second publication to occur no later than three weeks prior to the hearing on the Motion. I further intend to serve the Motion by e-mail to the known e-mail addresses for Mr. Prado and Mrs. Prado, as well as to counsel as set forth in the Sale Order at Paragraph II(H), and by email to counsel for Wells Fargo, the Aqua Associations, and the Commission.

DIMOND KAPLAN & ROTHSTEIN, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 · TEL. 305.374.1920 FAX. 305.374.1961

24.     I have conferred with counsel for the Commission, who stated that the Commission does not oppose the instant request for relief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:     Miami, Florida
Date:          August 5, 2014

_____
Scott M. Dimond

6 of 6

**Ronald R Wolfe & Associates, P.L.**
ATTORNEYS AT LAW
4919 MEMORIAL HIGHWAY
SUITE 200
TAMPA, FLORIDA 33634

Please reply to:
Post Office Box 25018
Tampa, FL 33622-5018

Telephone (813) 251-4766
Telefax (813) 251-1541

July 28, 2014

Re.:   Loan No.:              0266508514
       Mortgagor:             WALDYR DA SILVA PRADO NETO A/K/A WALDYR S.
       PRADO A/K/A WALDYR DE SILVA NETO
       Property Address:      6103 AQUA AVENUE APARTMENT #703
                              MIAMI BEACH, FL   33141-5875
       Our File No.:          F13000171

Dear Sir or Madam:

Pursuant to your request, please find listed below an itemization of the amount that is needed to payoff the loan(s) related to the above referenced property. Please see the enclosed **"Explanation of Charges"** included with this letter for an explanation of each of the following expense items listed below:

**Estimated Charges:**   The amounts listed below may be estimated or anticipated because these services maybe ongoing and not finished. Upon our receipt of the below Payoff Amount, we will stop all action on the foreclosure case and, if an action has been filed with a court, we will advise the court accordingly. If the actual amount of the charges is less than the amount stated below, we will send back to you the amount that you have overpaid.

**How to Make Payment:**   If you are going to mail the Total Payoff Amount, it must be in the form of cashier's or certified check or money order and made payable to "Ronald R Wolfe & Associates, P.L.".   Funds may also be wired to that trust account or sent via Western Union Quick Collect.   (Instructions regarding these payment options are enclosed.)

If you know the exact date that you will send the funds to our office and want to obtain a Payoff Amount through a specific date, please contact us.   Funds received after this date will be returned to the sender, as additional charges will have accrued.

If you are unable to send the Total Payoff Amount as stated below and would like to be considered for other options to stop the foreclosure (such options may include a modification of your loan terms or a repayment plan) please contact us.

Many courts in the State of Florida now require a motion, hearing and/or order for the cancellation of a judicial sale. Some courts may not entertain motions and hearings to cancel a judicial sale unless filed a specified number of days in advance of a judicial sale.   Accordingly, when Payoff Amounts are received directly by the Firm within the fifteen (15) day period before a judicial sale that has been scheduled by a court, the Firm may not be able, in all instances, to secure the cancellation of the judicial sale.   Prior to remitting funds to the Firm within the fifteen (15) day period before a judicial sale, the Firm encourages you to contact the Clerk of Court for the Circuit Court in which your case is pending and determine for yourself what their specific requirements and registry charges are for cancelling judicial sales by remitting full Payoff Amounts directly to the Clerk of Court in advance of the scheduled judicial sale.

**Charges**

UNPAID PRINCIPAL BALANCE                                                     402,651.36

This law firm may be deemed a "debt collector" under the Fair Debt Collection Practices Act.   Any and all information obtained during the prosecution of this lawsuit may be used for the purpose of collecting a debt.

**EXHIBIT**
"1"
tabbies

| | |
|---|---:|
| INTEREST | 37,704.55 |
| ACCUMULATED LATE CHARGES | 321.36 |
| PROPERTY INSPECTIONS | 15.00 |
| ESCROW ADVANCES | 28,276.08 |
| ATTORNEY'S FEES | 1,575.00 |
| TITLE SEARCH | 175.00 |
| TITLE EXAMINATION | 75.00 |
| FILING FEES | 1,972.00 |
| PROCESS SERVICE | 490.50 |

The charge for service or attempted service of process upon unknown tenants/spouse is $225.00 and is included in the total amount for Service of Process listed above.   In this case, there were 1 unknown tenants/spouse served.

| | |
|---|---:|
| NOA PUBLICATION 1 | 180.00 |
| E-FILING COST | 2.50 |

| | |
|---|---:|
| **Total Payoff Amount** | $473,438.35 |

The Total Payoff Amount is valid through **9/10/14 at 12:00 p.m. (noon)**, but can change under certain circumstances. *See* **Changes in the Total Payoff Amount** and **Notice Regarding Bankruptcy Actions** below.

* * * * * * * * * *

If you have any questions about the amounts listed above, please refer to the **Explanation of Charges** document attached with this letter.   If you need further explanation, please contact our office.

**Changes in the Total Payoff Amount:**   The client/lender reserves the right to demand amounts in addition to the charges stated above before or after the release of its security interest in the property if there was an error or omission in the above charges that was made in good faith, whether mathematical, clerical, typographical or otherwise.   The Total Payoff Amount is also subject to change to reflect any transactions that may occur on or after the date of this letter.   All funds are subject to final approval by the client/lender.   Any funds that do not meet these requirements will be returned to the remitter.

**Notice Regarding Bankruptcy Action:**   If an action has been filed with a bankruptcy court, the charges stated above are subject to change daily.   Accordingly, this Total Payoff Amount will be void if you file a lawsuit in a bankruptcy court before the Good Through Date identified on this letter above.   Additionally, if this loan is currently subject to a bankruptcy court action, then the Total Payoff Amount may become void if additional legal action is taken before the Good Through Date stated above or if certain events occur, for example, if a relief from the bankruptcy stay is obtained or the case is discharged or dismissed.

If a foreclosure action has been suspended due to loss mitigation or bankruptcy activity, the fees and costs are again subject to change daily and new figures would need to be obtained.

**Delaying the Foreclosure Action:**   Please note that we cannot place the foreclosure "on hold" while we are waiting to receive the Total Payoff Amount.

**Satisfaction of Note and Mortgage:**   Please note that if all amounts owed to the lender/client are paid off, then the note and mortgage will be satisfied and will not be assigned or transferred to the person who pays off the loan.

If you have any questions, or if we can be of further assistance, please do not hesitate to contact our office.

Sincerely,

Client Services
Ronald R Wolfe & Associates, P.L.

This law firm may be deemed a "debt collector" under the Fair Debt Collection Practices Act.   Any and all information obtained during the prosecution of this lawsuit may be used for the purpose of collecting a debt.

07/01/2014 9:32:06 AM

Resident Transaction Report
0105 SPEAR AT AQUA CONDO
Date: 01/01/2014 - 07/01/2014

Building: 0000    SPEAR AT AQUA CONDO

C/O FirstService Residential

201 AQUA AVE STE 100

MIAMI BCH, FL 33141

| Res ID | Resident Name Unit Address | Type | Date | Code | Charge Code Desc Bill Address | Check No | Amount | Balance |
|--------|----------------------------|------|------|------|-------------------------------|----------|--------|---------|
| 0703 01 | Andrea Silva Prado | | | | | | | |
| | 6103 Aqua Ave 0703 | | | | 6103 Aqua Ave 703 | | | |
| | MIAMI BCH, FL 33141 | | | | Miami Beach, FL 33141 | | | |
| | Current Credit History Code: | | | DM | Effective Date: 06/18/2014 | | | |
| | | | | | | | Beg Bal | 16,776.35 |
| | | Charge | 01/01/2014 | MM | Maintenance Fees | | 1,022.75 | 17,799.10 |
| | | Charge | 02/01/2014 | MM | Maintenance Fees | | 1,022.75 | 18,821.85 |
| | | Charge | 02/18/2014 | LF | Late Fees | | 51.14 | 18,872.99 |
| | | Charge | 02/19/2014 | DN | Demand Collection Cost | | 25.00 | 18,897.99 |
| | | Charge | 03/01/2014 | MM | Maintenance Fees | | 1,022.75 | 19,920.74 |
| | | Charge | 03/17/2014 | LF | Late Fees | | 51.14 | 19,971.88 |
| | | Charge | 03/20/2014 | DN | Demand Collection Cost | | 25.00 | 19,996.88 |
| | | Charge | 04/01/2014 | MM | Maintenance Fees | | 1,022.75 | 21,019.63 |
| | | Charge | 04/17/2014 | LF | Late Fees | | 51.14 | 21,070.77 |
| | | Charge | 04/21/2014 | DN | Demand Collection Cost | | 25.00 | 21,095.77 |
| | | Charge | 05/01/2014 | MM | Maintenance Fees | | 1,022.75 | 22,118.52 |
| | | Charge | 05/19/2014 | LF | Late Fees | | 51.14 | 22,169.66 |
| | | Charge | 05/20/2014 | DN | Demand Collection Cost | | 25.00 | 22,194.66 |
| | | Charge | 06/01/2014 | MM | Maintenance Fees | | 1,022.75 | 23,217.41 |
| | | Charge | 06/17/2014 | LF | Late Fees | | 51.14 | 23,268.55 |
| | | Charge | 06/18/2014 | DN | Demand Collection Cost | | 25.00 | 23,293.55 |
| | | Charge | 07/01/2014 | MM | Maintenance Fees | | 1,022.75 | 24,316.30 |
| | | | | | | | Res Balance | 24,316.30 |

EXHIBIT

tabbies

"2"

07/01/2014 9:32:54 AM

**Resident Transaction Report**
**0102 AQUA MASTER**
**Date: 01/01/2014 - 07/01/2014**

Building: 0105   AQUA MASTER - SPEAR

C/O FirstService Residential

201 AQUA AVE STE 100

MIAMI BCH, FL 33141

| Res ID | Resident Name<br>Unit Address | Type | Date | Code | Charge Code Desc<br>Bill Address | Check No | Amount | Balance |
|--------|-------------------------------|------|------|------|----------------------------------|----------|--------|---------|
| 0703 01 | Andrea Silva Prado | | | | | | | |
| | 6103 Aqua Ave 0703 | | | | 6103 Aqua Ave 703 | | | |
| | Miami Beach, FL 33141 | | | | Miami Beach, FL 33141 | | | |
| | Current Credit History Code: | | | AT | Effective Date: 01/24/2013 | | | |
| | | | | | | Beg Bal | | 14,325.06 |
| | | Charge | 01/01/2014 | AM | Master Assessment | | 901.73 | 15,226.79 |
| | | Charge | 02/01/2014 | AM | Master Assessment | | 901.73 | 16,128.52 |
| | | Charge | 02/25/2014 | LF | Late Fees | | 45.09 | 16,173.61 |
| | | Charge | 03/01/2014 | AM | Master Assessment | | 901.73 | 17,075.34 |
| | | Charge | 03/24/2014 | LF | Late Fees | | 45.09 | 17,120.43 |
| | | Charge | 04/01/2014 | AM | Master Assessment | | 901.73 | 18,022.16 |
| | | Charge | 04/22/2014 | LF | Late Fees | | 45.09 | 18,067.25 |
| | | Charge | 05/01/2014 | AM | Master Assessment | | 901.73 | 18,968.98 |
| | | Charge | 06/01/2014 | AM | Master Assessment | | 901.73 | 19,870.71 |
| | | Charge | 06/23/2014 | LF | Late Fees | | 45.09 | 19,915.80 |
| | | Charge | 07/01/2014 | AM | Master Assessment | | 901.73 | 20,817.53 |
| | | | | | | Res Balance | | 20,817.53 |

**Scott M. Dimond**

| | |
|---|---|
| **From:** | William T. Freyvogel [wfreyvogel@mfpclaw.com] |
| **Sent:** | Thursday, July 24, 2014 8:55 AM |
| **To:** | Scott M. Dimond |
| **Cc:** | Brown, David (LARO) |
| **Subject:** | RE: Securities and Exchange Commission v. Waldyr Da Silva Prado Neto, U.S. S.D. N.Y. Case No.: 12-CIV-7094 |

Scott:

Yes.  Using the statements that we provided on July 1, 2014 and adding the additional amounts due for August and September, the balances owed through September 10, 2014 would be $26,514.08 to the Spear Association and $22,711.17 to the Master Association.

Bill

William T. Freyvogel
**MATSON FREYVOGEL PC**
8300 Greensboro Drive - Suite L1 - Box 640
Tysons Corner, Virginia 22102
Phone:  (703) 448-7602
Fax:     (703) 448-8144
E-Mail:  wfreyvogel@mfpclaw.com
Web:   www.mfpclaw.com

Please note that as of January 1, 2014, our law firm has gone "virtual".  We have closed our office in Fairfax and changed our address for mail and deliveries.  Our telephone numbers, e-mail addresses and web site address remain unchanged. Please see the "Contact Info" page on our web site (www.mfpclaw.com/contact.htm) for additional details.

**From:** Scott M. Dimond [Scott@dkrpa.com]
**Sent:** Thursday, July 24, 2014 8:43 AM
**To:** William T. Freyvogel
**Cc:** Scott M. Dimond; Brown, David (LARO)
**Subject:** Re: Securities and Exchange Commission v. Waldyr Da Silva Prado Neto, U.S. S.D. N.Y. Case No.: 12-CIV-7094

Thanks Bill - could you please forward me the amounts that would be due assuming a September 10th closing? I can specifically include them in my motion.

Scott

Scott M. Dimond
Dimond Kaplan & Rothstein, P.A.


"William T. Freyvogel" <wfreyvogel@mfpclaw.com> wrote:

Scott:

Thanks for the update.  Your plan sounds fine to me.  Obviously, if the Court approves this approach, we will need to revise our account statements to include the assessments due for August and September.

1



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
LOS ANGELES REGIONAL OFFICE
5670 Wilshire Boulevard, 11ᵗʰ Floor
Los Angeles, California 90036

Telephone: (323) 965-3321
Email: BrownDav@sec.gov

July 9, 2014

Scott M. Dimond, Esq.                                    Via Email: Scott@dkrpa.com
Dimond Kaplan & Rothstein, P.A.
Offices at Grand Bay Plaza
2665 South Bayshore Drive
Penthouse 2B
Miami, FL 33133

     Re:    *SEC v. Prado*
              (SDNY Case No. 12-CV-07094-KPF)

Dear Mr. Dimond:

     The Securities and Exchange Commission has a claim to the proceeds from the sale of the condominium located at 6103 Aqua Avenue, Unit 703, Miami, Florida (the "Property") owned by defendant Waldyr da Silva Prado Neto ("Prado"). Pursuant to your June 27, 2014 email, this letter is the Commission's statement of claim to the proceeds from the sale of the Property.

     On September 20, 2012, the Commission filed a complaint against Prado alleging violations of the federal securities laws. On October 5, 2012, the Court entered an order of preliminary injunction and asset freeze in favor of the Commission and against Prado and, on October 9, 2012, the Commission recorded that order against the Property with the Miami-Dade County Clerk's Office. On January 7, 2014, the Court entered a Final Judgment in favor of the Commission and against Prado (a copy of which is enclosed), Section III of which ordered Prado to pay to the Commission disgorgement of $397,110.01 plus prejudgment interest thereon of $41,622.90 and to pay a civil penalty of $5,195,500. The Court extended the asset freeze over the Property, as modified by the Court's order of February 10, 2014 permitting you, as Receiver, to sell the Property and to pay bona fide claims from the sale proceeds.

     As of this date, the Commission's claim to the proceeds from the sale of the Property under the Final Judgment and the Court's orders is $5,448,479.00, which represents the current unsatisfied disgorgement and civil penalty amounts Prado owes under the Final Judgment including accrued postjudgment interest from January 7, 2014 through July 11, 2014 as permitted under 28 U.S.C. § 1961, as set forth on the attached itemization.

     The Commission reserves the right to supplement this statement of claim should circumstances require.

**EXHIBIT**
"3"

Scott M. Dimond, Esq.
July 9, 2014
Page 2

Please let me know if you have any questions or require any additional information.

Very truly yours,

David S. Brown
Staff Attorney

Enclosures

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,　　:

　　　　　Plaintiff,　　　　　　　　　　　　　:

　　　-against-　　　　　　　　　　　　　　　:

WALDYR DA SILVA PRADO NETO,　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　:

　　　　　Defendant.　　　　　　　　　　　　　:

---------------------------------------------------------------xx

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: __01/07/2014__ |

12 Civ. 7094 (KPF)

ECF Case

## FINAL JUDGMENT AGAINST DEFENDANT WALDYR DA SILVA PRADO NETO

The matter came to be heard upon the application of Plaintiff Securities and Exchange Commission (the "Commission") for an Order to Show Cause ("OSC") why a judgment by default should not be entered against defendant Waldyr Da Silva Prado Neto ("Prado").  On November 19, 2013, the Court granted the OSC based on: the Affidavit of David S. Brown submitted pursuant to Fed. R. Civ. P. 55(b)(2), Local Civil Rule 55.2(b), and this Court's Individual Rules of Practice in Civil Cases, Rule 4.J and Attachment A; the Clerk's Certificate of fault (Docket No. 41); and the files and records of this action.  The Court set a conference on the OSC for January 6, 2014 in Courtroom 618 of this Court.

The Court, having considered: (1) the Complaint; (2) the Affidavit David S. Brown pursuant Local Civil Rule 55.2(b) and this Court's Individual Rules of Practice in Civil Cases, Rule 4.J and Attachment A; (3) Clerk's Certificate of fault (Docket No. 41); and (4) other files and records filed in support of the Commission's application and all other evidence and argument presented regarding the application, finds that:

A.  This Court has jurisdiction over the parties to, and the subject matter of, this action.

B. The Commission has demonstrated that Prado was properly served with the Summons and Complaint in this action, and that Prado failed to file an answer to the Complaint or otherwise defendant the Commission's action.

C. The Clerk of this Court noted Prado's default on October 21, 2013.

## I.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Prado, and his agents, servants, employees, attorneys, and those persons in active concert or participation with him who receive actual notice of this Final Judgment by personal service, facsimile service, any other means permitted in Section IV of this Final Judgment, or otherwise, and each of them, be and hereby are permanently restrained and enjoined from, directly or indirectly, in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange:

(1)     employing any device, scheme or artifice to defraud;

(2)     making any untrue statement of material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(3)     engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person

in violation of Sections 10(b) of the Exchange Act of 1934 [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## II.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Prado, and his agents, servants, employees, attorneys, and all persons in active concert or participation with him

who receive actual notice of this Final Judgment by personal service, facsimile service, any other means permitted in Section IV of this Final Judgment, or otherwise, are permanently restrained and enjoined from violating Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 [17 C.F.R. § 240.14e-3] promulgated thereunder, in connection with any tender offer or request or invitation for tenders, from engaging in any fraudulent, deceptive, or manipulative act or practice, by:

(1) purchasing or selling or causing to be purchased or sold the securities sought or to be sought in such tender offer, securities convertible into or exchangeable for any such securities or any option or right to obtain or dispose of any of the foregoing securities while in possession of material information relating to such tender offer that they know or have reason to know is nonpublic and know or have reason to know has been acquired directly or indirectly from the offering person; the issuer of the securities sought or to be sought by such tender offer; or any officer, director, partner, employee or other person acting on behalf of the offering person of such issuer, unless within a reasonable time prior to any such purchase or sale such information and its source are publicly disclosed by press release or otherwise; or

(2) communicating material, nonpublic information relating to a tender offer, which they know or have reason to know is nonpublic and know or have reason to know has been acquired directly or indirectly from the offering person; the issuer of the securities sought or to be sought by such tender offer; or any officer, director, partner, employee, advisor, or other person acting on behalf of the offering person of such issuer, to any person under circumstances in which it is reasonably foreseeable that such communication is likely to result in the purchase or sale of securities in the

manner described in subparagraph (a) above, except that this paragraph shall not apply to a communication made in good faith

    (a)  to the officers, directors, partners or employees of the offering person, to its advisors or to other persons, involved in the planning, financing, preparation or execution of such tender offer;

    (b) to the issuer whose securities are sought or to be sought by such tender offer, to its officers, directors, partners, employees or advisors or to other persons involved in the planning, financing, preparation or execution of the activities of the issuer with respect to such tender offer; or

    (c)  to any person pursuant to a requirement of any statute or rule or regulation promulgated thereunder.

### III.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Prado is liable for disgorgement of $397,110.01 representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $41,622.90, and that Prado is liable for a civil penalty in the amount of $ 5,195,500.00 pursuant to Section 21A of the Exchange Act. Prado shall satisfy this obligation by paying these amounts to the Commission 14 days after entry of this Final Judgment. This obligation may be satisfied by relinquishing, within 14 days after entry of this Final Judgment, all legal and equitable right, title and interest in the assets and funds frozen subject to the Court's asset freeze orders of September 20, 2012 (Docket No. 3) and October 5, 2012 (Docket No. 15) including $40,343.11 in a bank account at Wells Fargo Bank; $5,033.18 in a brokerage account held at Morgan Stanley Smith Barney; and $130,292.53 representing Prado's 401(k) distribution held by the plan

administrator, Wells Fargo Institutional Retirement (the "Frozen Funds"). In satisfaction of

Prado's disgorgement obligations, Wells Fargo Bank, Morgan Stanley Smith Barney, and Wells

Fargo Institutional Retirement are hereby directed to transmit the Frozen Funds to the

Commission within 14 days after entry of this Final Judgment. Wells Fargo Bank, Morgan

Stanley Smith Barney, and Wells Fargo Institutional Retirement may transmit this payment

electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions

upon request. Payment may also be made directly from a bank account via Pay.gov through the

SEC website at http://www.sec.gov/about/offices/ofm.htm. Wells Fargo Bank, Morgan Stanley

Smith Barney, and Wells Fargo Institutional Retirement may also pay the Frozen Funds by

certified check, bank cashier's check, or United States postal money order payable to the

Securities and Exchange Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of

this Court; Prado as a defendant in this action; and specifying that payment is made pursuant to

this Final Judgment.

Wells Fargo Bank, Morgan Stanley Smith Barney, and Wells Fargo Institutional

Retirement shall simultaneously transmit photocopies of evidence of payment of the Frozen

Funds and case identifying information to the Commission's counsel in this action. By making

this payment, Prado relinquishes all legal and equitable right, title, and interest in such funds and

no part of the funds shall be returned to Prado.

Following the payment of Prado's disgorgement obligations by Wells Fargo Bank,

Morgan Stanley Smith Barney, and Wells Fargo Institutional Retirement to the Commission as

set forth above, all asset freeze obligations imposed by the Court's orders on September 20, 2012 (Docket No. 3) and October 5, 2012 (Docket No. 15) shall terminate as to the Frozen Funds only without further order of the Court.  The Court's asset freeze obligations on Prado's real property imposed by the Court's orders on September 20, 2012 (Docket No. 3) and October 5, 2012 (Docket No. 15) shall not terminate except by further order of this Court.

The Commission may enforce the Court's judgment for disgorgement by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after 14 days after entry of this Final Judgment.  Prado shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

## IV.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that notice of this Judgment may be accomplished by delivery of a copy of this Judgment by first class mail, overnight delivery, international express mail, facsimile, electronic mail, or personally by agents or employees of the Commission, upon Prado or his attorneys and upon any bank, saving and loan institution, credit union, financial institution, transfer agent, broker-dealer, investment company, title company, commodity trading company, storage company, or any other person, partnership, corporation, or legal entity that may subject to any provision of this Judgment.

## V.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction over this action for the purpose of enforcing the terms of this Final Judgment.

///

///

///

## VI.

There being no reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

It is further ORDERED that this case shall remain open until further order by the Court.

IT SO ORDERED.

Dated:  _____January 7__ , 2014

_____
Honorable Katherine Polk Failla
UNITED STATES DISTRICT JUDGE

*SEC v. Prado*
(SDNY Case No. 12-CV-07094-KPF)

**<u>Amounts Owed Under Final Judgment</u>**
**<u>(as of July 9, 2014)</u>**

<u>Disgorgement</u>

| | |
|---|---|
| Disgorgement ordered: | $397,110.01 |
| Prejudgment interest: | $ 41,662.90 |
| | $438,772.91 |
| Payments received: | ($189,219.92) |
| Outstanding disgorgement: | $249,552.99 |
| Postjudgment interest: (1/7/14-7/11/14 under 28 U.S.C. § 1961 at 0.13%) | $        2.67 |
| Total disgorgement due: | $249,555.66 |

<u>Civil Penalty</u>

| | |
|---|---|
| Civil penalty ordered: | $5,195,500.00 |
| Payments received: | $            0 |
| Outstanding civil penalty: | $5,195,500.00 |
| Postjudgment interest: (1/7/14-7/11/14 under 28 U.S.C. § 1961 at 0.13%) | $    3,423.34 |
| Total civil penalty due: | $5,198,923.34 |

| | |
|---|---|
| GRAND TOTAL DUE: | $5,448,479.00 |

**A. Settlement Statement**

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

**B. Type of Loan**

| | | |
|---|---|---|
| ○ 1. FHA | ○ 2. FmHA | ○ 3. Conv. Unins. |
| ○ 4. V.A. | ○ 5. Conv. Ins. | |

| 6. File Number | 7. Loan Number | 8. Mortg. Ins. Case Num. |
|---|---|---|
| 14-039 | ID: | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME OF BORROWER:** Luis Arguello, a married man

Address of Borrower: Aqua Avenue   Miami Beach, Florida 33141   Redacted

**E. NAME OF SELLER:** Scott M. Dimond, as equity receiver appointed by the Court in the case of Securities and Exchange Commission v. Waldyr Da Silva Prado Neto, S.D.N.Y. Case No. 12-CIV-7094, pending in the United States District Court for the Southern District of New York

Address of Seller:   TIN:

**F. NAME OF LENDER:**

Address of Lender:   Redacted

**G. PROPERTY LOCATION:** 6103 Aqua Avenue, CondoUnit 703, Miami, Florida 33141-5877   TIN:   9809

**H. SETTLEMENT AGENT:** Rothman & Tobin, P.A.

Place of Settlement: 11900 Biscayne Boulevard, Suite 740, Miami, Florida 33181   Phone: 305-895-3225

**I. SETTLEMENT DATE:** 9/10/14   **DISBURSEMENT DATE:** 9/10/14

| J. Summary of borrower's transaction | | K. Summary of seller's transaction | |
|---|---|---|---|
| **100. Gross amount due from borrower:** | | **400. Gross amount due to seller:** | |
| 101. Contract sales price | 1,205,000.00 | 401. Contract sales price | 1,205,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (Line 1400) | 1,106.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance: | | Adjustments for items paid by seller in advance: | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. master association from 09/10/14 to 09/30/14 | 631.21 | 408. master association from 09/10/14 to 09/30/14 | 631.21 |
| 109. condo association from 09/10/14 to 09/30/14 | 715.93 | 409. condo association from 09/10/14 to 09/30/14 | 715.93 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross amount due from borrower:** | 1,207,453.14 | **420. Gross amount due to seller:** | 1,206,347.14 |
| **200. Amounts paid or in behalf of borrower:** | | **500. Reductions in amount due to seller:** | |
| 201. Deposit or earnest money | 120,600.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (Line 1400) | 123,222.75 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Principal amount of second mortgage | | 504. Payoff of first mortgage loan | 474,438.35 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. Deposits held by seller | |
| 207. Principal amt of mortgage held by seller | | 507. Principal amt of mortgage held by seller | |
| 208. | 1,000.00 | 508. | 1,000.00 |
| 209. | | 509. | |
| Adjustments for items unpaid by seller: | | Adjustments for items unpaid by seller: | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes from 01/01/14 to 09/10/14 | 9,416.96 | 511. County taxes from 01/01/14 to 09/10/14 | 9,416.96 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total paid by/for borrower:** | 131,016.96 | **520. Total reductions in amount due seller:** | 608,078.06 |
| **300. Cash at settlement from/to borrower:** | | **600. Cash at settlement to/from seller:** | |
| 301. Gross amount due from borrower (line 120) | 1,207,453.14 | 601. Gross amount due to seller (line 420) | 1,206,347.14 |
| 302. Less amount paid by/for the borrower (line 220) | (131,016.96) | 602. Less total reductions in amount due seller (line 520) | (608,078.06) |
| 303. Cash ( ☑ From ☐ To ) Borrower: | 1,076,436.18 | 603. Cash ( ☑ To ☐ From ) Seller: | 598,269.08 |

**Substitute Form 1099 Seller Statement:**   The information contained in blocks E, G, H, and I and on line 401 is important tax information and is being furnished to the IRS.  If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

**Seller Instructions:**   If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your tax return; for other transactions, complete the applicable parts of Form 4797, Form 6262 and/or Schedule D (Form 1040).

Borrower's Initial(s):

Seller's Initial(s):

**EXHIBIT**

tabbies "4"

| L. Settlement charges | | | Borrower POC Seller POC | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|---|---|
| 700. Total Sales/Brokers Com. based on price | $1,205,000.00 @ | 5.0000 % = 60,250.00 | | | |
| 701. | 30,125.00 | 2.5000 % to One Sotheby's International Realty | | | |
| 702. | 30,125.00 | 2.5000 % to Coldwell Banker Res. RE | | | |
| 703. Commission paid at settlement | | to | | | 60,250.00 |
| 704. | | to | | | |
| 800. Items payable in connection with loan: | | | Borrower POC Seller POC | | |
| 801. Loan origination fee | | % to | | | |
| 802. Loan discount | | % to | | | |
| 803. Appraisal fee | | to | | | |
| 804. Credit report | | to | | | |
| 805. Lender's inspection fee | | to | | | |
| 806. Mortgage insurance application fee | | to | | | |
| 807. Assumption Fee | | to | | | |
| 808. | | to | | | |
| 809. | | to | | | |
| 810. | | to | | | |
| 811. | | to | | | |
| 900. Items required by lender to be paid in advance: | | | Borrower POC Seller POC | | |
| 901. Interest from | | to | @ | /day | |
| 902. Mortgage insurance premium for | | months to | | | |
| 903. Hazard insurance premium for | | years to | | | |
| 904. Flood insurance premium for | | years to | | | |
| 905. | | years to | | | |
| 1000. Reserves deposited with lender: | | | Borrower POC Seller POC | | |
| 1001. Hazard insurance | | months @ | per month | | |
| 1002. Mortgage insurance | | months @ | per month | | |
| 1003. City property taxes | | months @ | per month | | |
| 1004. County property taxes | | months @ | per month | | |
| 1005. Annual assessments | | months @ | per month | | |
| 1006. Flood insurance | | months @ | per month | | |
| 1007. | | months @ | per month | | |
| 1008. | | months @ | per month | | |
| 1009. Aggregate accounting adjustment | | | | | |
| 1100. Title charges | | | Borrower POC Seller POC | | |
| 1101. Settlement or closing fee | | to Rothman & Tobin, P.A. | | 450.00 | 450.00 |
| 1102. Abstract or title search | | to Rothman & Tobin, P.A. | | | 300.00 |
| 1103. Title examination | | to | | | |
| 1104. Title insurance binder | | to | | | |
| 1105. Document preparation | | to | | | |
| 1106. Notary fees | | to | | | |
| 1107. Attorney's Fees | | to | | | |
| (includes above item numbers: | | | ) | | |
| 1108. Title Insurance | | to Stewart Title Guaranty Company/Rothman & Tobin, P.A. | | | 5,587.50 |
| (includes above item numbers: | | | ) | | |
| 1109. Lender's coverage (Premium) | | | | | |
| 1110. Owner's coverage (Premium) | $1,205,000.00 ($5,587.50) | | | | |
| 1111. Endorse | | | | | |
| 1112. | | to | | | |
| 1113. | | to | | | |
| 1200. Government recording and transfer charges: | | | Borrower POC Seller POC | | |
| 1201. Recording fees | Deed | $18.50 Mortgage(s) $214.00 Releases | | 232.50 | |
| 1202. City/county tax/stamps | Deed | Mortgage(s) | | | |
| 1203. State tax/stamps | Deed | $7,230.00 Mortgage(s) | | | 7,230.00 |
| 1204. certificate of approval | | to Simplifile | | 10.00 | |
| 1205. erecording fee | | to Simplifile | | 13.50 | |
| 1300. Additional settlement charges: | | | Borrower POC Seller POC | | |
| 1301. Survey | | to MeLand Services, Inc. | | 400.00 | |
| 1302. Pest Inspection | | to | | | |
| 1303. Lien Search | | to Reliable Lien Search | | | 180.00 |
| 1304. Master Association thru 9/30 | | to Aqua Master-Spear | | | 22,711.17 |
| 1305. Association dues thru 9/30 | | to Spear at Aqua Condo | | | 26,514.08 |
| 1306. | | to | | | |
| 1307. | | to | | | |
| 1308. | | to | | | |
| 1309. | | | | | |
| 1400. Total settlement charges: | | | | 1,106.00 | 123,222.75 |
| ( Enter on lines 103, Section J and 502, Section K ) | | | | | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____ Borrower     _____ Seller
Luis Arguello

_____ Borrower     _____ Seller

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused, or will cause, the funds to be disbursed in accordance with this statement.

Rothman & Tobin, P.A.
By: _____     _____
                                                                        Date
As Its Authorized Representative

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

DoubleTime®

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff | : | |
| | : | |
| v. | : | 12-CV-07094 (KPF) |
| | : | |
| WALDYR DA SILVA PRADO NETO, Defendant. | : | |

### NOTICE TO WALDYR DA SILVA PRADO NETO AND ANDREA REIS BATISTON DA SILVA PRADO OF HEARING ON MOTION FOR APPROVAL OF PROCEDURE FOR CLOSING AND DISTRIBUTION OF SALE PROCEEDS

Notice is hereby given to Waldyr Da Silva Prado Neto and Andrea Reis Batiston Da Silva Prado of a hearing on Receiver Scott M. Dimond's "Motion for Court Approval of Procedure for Closing and Distribution of Sale Proceeds" (the "Motion") filed in the above-referenced action. The Motion is filed pursuant to the June 25, 2014 "Order Granting Receiver's Motion for Court Approval of Private Sale Pursuant to 28 U.S.C. §2001(b)" entered by Judge Katherine Polk Failla in the U.S. District Court for the Southern District Court of New York in this action.

(a)     Description of the Property:

CONDOMINIUM UNIT NO. 703, OF SPEAR AT AQUA CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF.

(b)     Proposed recipients of distribution from sale of the Property:

As detailed in the Motion, the Receiver seeks Court approval to distribute proceeds from the sale of the Property, including to the following entities that the Receiver has determined have *bona fide* claims to such proceeds: Wells Fargo Bank (NA); Spear at Aqua Condominium Association, Inc.; Aqua Master Condominium Association, Inc.; and the Securities and Exchange Commission (the "Commission").

(c)     The Time and Place of Hearing on the Motion (the "Hearing"):

Date and Time:     September 8, 2014 at 3:00 p.m.
Place of Sale:     Thurgood Marshall United States Courthouse, Courtroom 618
                   40 Foley Square
                   New York, NY 10007

All persons claiming an interest in the proceeds from the sale of the Property may be heard at the Hearing. Answering papers, if any, shall be filed with the Court and served by delivering copies thereof to the Commission, 5670 Wilshire Blvd., 11th Floor, Los Angeles, CA 90036, Attn: David S. Brown, no later than two (2) weeks before the Hearing. Any questions may be directed to the Receiver at 305-374-1920.

EXHIBIT
"B"